```
                 IN THE UNITED STATES DISTRICT COURT

                FOR THE WESTERN DISTRICT OF MICHIGAN

                          SOUTHERN DIVISION

     JASON BRUNEAU,

               Plaintiff,           No: 1:19cv1037

      vs.

     AQUINAS COLLEGE,

               Defendant.


     Before:

                          THE HONORABLE RAY KENT
                             U.S. Magistrate Judge
                             Grand Rapids, Michigan
                          Monday, September 21, 2020
                          Motion to Compel Proceedings

     APPEARANCES:

                    JASON BRUNEAU
                    5020 Carson Avenue, SW
                    Grand Rapids, MI 49548
                    (616) 238-8558
                              In Pro Per;

                    MS. STEPHANIE R. SETTERINGTON
                    Varnum Riddering Schmidt & Howlett LLP
                    333 Bridge Street, NW
                    P.O. Box 352
                    Grand Rapids, MI 49501-0352
                    (616) 336-6000
                              On behalf of the Defendant.

     TRANSCRIBED BY:   MR. PAUL G. BRANDELL, CSR-4552, RPR, CRR
```

|   |   |
|---|---|
| 1 | 09/21/2020 |
| 2 | 11:04 a.m. |
| 3 | THE CLERK:  The United States District Court for the |
| 4 | Western District of Michigan is now in session.  The Honorable |
| 5 | Ray Kent, United States Magistrate Judge, presiding. |
| 6 | THE COURT:  This is 19cv1037, Bruneau versus Aquinas |
| 7 | College.  We have Ms. Setterington on behalf of Defendants and |
| 8 | Mr. Bruneau appearing pro se.  We are conducting the hearing by |
| 9 | video.  Zoom, I guess, is that the platform we are on?  All |
| 10 | right. |
| 11 | We're here on Defendant's motion to compel, which |
| 12 | appears in the Court's record at ECF No. 29.  Defendants also |
| 13 | filed a brief in support which appears in the record at ECF 30. |
| 14 | Mr. Bruneau filed a response which appears in the Court's |
| 15 | record at ECF 34.  So I have read all of that. |
| 16 | Ms. Setterington, it seems to me that Mr. Bruneau, |
| 17 | certainly one of the points he expressly makes and kind of the |
| 18 | essence of his argument is that Aquinas made decisions in the |
| 19 | mid-'90s and in 2016 to exclude him.  So what relevance does |
| 20 | information about what's happened since then have to Aquinas's |
| 21 | defense? |
| 22 | MS. SETTERINGTON:  Right.  Thank you for that |
| 23 | question.  So the relevance of that information is that when we |
| 24 | are dealing with claims of violations of the Rehabilitation Act |
| 25 | and the Americans with Disabilities Act, and Michigan -- |

|   |   |
|---|---|
| 1 | MR. BRUNEAU: Sorry. I am having trouble hearing. |
| 2 | MS. SETTERINGTON: Can everyone else hear me okay? |
| 3 | THE COURT: I can hear you. |
| 4 | MS. SETTERINGTON: Okay. |
| 5 | THE COURT: Mr. Bruneau, you are having trouble |
| 6 | hearing? |
| 7 | MR. BRUNEAU: Yeah. A little bit. |
| 8 | MS. SETTERINGTON: I can try to speak a little more |
| 9 | loudly if you'd like? |
| 10 | THE COURT: Sure. I can hear you, Mr. Bruneau, just |
| 11 | fine. I can hear both of you fine and the same. But obviously |
| 12 | you have to be able to hear Ms. Setterington, as well. Go |
| 13 | ahead, Ms. Setterington. Yeah. Just try talking a little |
| 14 | louder maybe. |
| 15 | MS. SETTERINGTON: So when we are dealing with claims |
| 16 | under the Americans with Disabilities Act, the Rehabilitation |
| 17 | Act, and Michigan's Persons With Disabilities Civil Rights Act |
| 18 | there are a number of different elements that need to be |
| 19 | produced. And before we pass go as a Plaintiff you have to be |
| 20 | able to establish that you are a qualified individual with a |
| 21 | disability. Establishing that he -- his qualified status is |
| 22 | Mr. Bruneau's obligation and it is not dependent upon what the |
| 23 | Defendant knew at the time that it took actions with regard to |
| 24 | Mr. Bruneau. |
| 25 | He has to show first that he is qualified. If he |

1 establishes that there are other defenses that Aquinas may be
2 able to make, but if he were to show he were a qualified
3 individual with a disability and that he suffered an adverse
4 action under circumstances that appeared to be based on his
5 disability, that's one step of the case that he needs to take.
6     If and when that happens Aquinas could then defend by
7 saying, we didn't take action based on his disability.  We took
8 action based on other legitimate non-discriminatory reasons.
9 That's a separate part of the case.  His qualified status comes
10 first, and I am entitled to discovery on that.
11     Mr. Bruneau is asking the Court ultimately to order
12 that Aquinas consider him eligible for reenrollment at the
13 school, and his criminal history is highly relevant to whether
14 he would be a qualified individual, you know, if he does seek
15 enrollment.
16     THE COURT:  Okay.
17     MS. SETTERINGTON:  There are other reasons besides the
18 qualified status that --
19     THE COURT:  I understand that, and we may or may not
20 get to those other points, but --
21     MR. BRUNEAU:  Can I respond?
22     THE COURT:  Of course.
23     MR. BRUNEAU:  Defense seemed to really rely on the
24 notion that Bruneau is not a good guy and we don't want him.
25 So what's the best way we can try to exclude him?  So what they

1 are doing is saying, well, hey, he has a criminal record so we
2 obviously need to get that into play.  So they are playing
3 this, oh, someone with his disability has to show they are
4 qualified.  First of all, I don't know what a criminal record
5 has to do with that.  Substantively nothing.  Right?  I've got
6 plenty of documentation, and I can provide expert witness
7 testimony that I am a qualified individual for the school, but
8 they want to say, oh, we need to -- we need to create this
9 picture of Bruneau that encompasses everything and that
10 includes his criminal record.

11 You know what?  I am not entirely against including my
12 criminal record because 95 percent of my criminal record is,
13 you know, the police responding to a call.  And if you are the
14 police, what do you have?  You have the tool, okay?  You can
15 make the arrest.  You can issue a complaint.  You know, I mean,
16 when you have a hammer everything starts to look like a nail,
17 right?  And it's no different with someone with a disability
18 except that, you know, people are going to be wondering what's
19 up with this guy and they are going to call the police and
20 obviously I am going to catch a case from it.

21 Now, if Aquinas is trying to say, well, you know,
22 again, it's -- it's -- it's this last step of their -- of their
23 program is going to say we need to show that Bruneau is not a
24 great guy, okay?  So obviously, you know, the criminal history
25 is important.  And you know what?  I say include the criminal

```
 1   history, but I also want access to the criminal history of all
 2   Aquinas administrators while I was attending then and today.
 3                THE COURT:  All right.  Ms. Setterington, what is
 4   the -- what is the qualified qualification -- what does
 5   Mr. Bruneau have to prove as part of his prima facie case to
 6   prove that he was qualified?
 7                MS. SETTERINGTON:  Well, the other -- the other way is
 8   qualified element means that he needs to show that
 9   independently of his disability that he would otherwise meet
10   the standards for admission and reenrollment at the college.
11   And the reason that this is important is although Mr. Bruneau
12   disagrees, not about him, it is a part of Aquinas's ordinary
13   application and enrollment procedures.  We ask every incoming
14   candidate whether they have a criminal history because we have
15   an obligation -- Aquinas has an obligation as a college to have
16   reasonable measures in place to provide a safe campus
17   environment.
18                THE COURT:  Sure.  So it's -- if I may interrupt you
19   for one second?  So it's qualified to participate in the
20   program, if I can use that word --
21                MS. SETTERINGTON:  Yes.
22                THE COURT:  -- that Plaintiff claims that he was
23   excluded from based upon his disability?
24                MS. SETTERINGTON:  Correct.
25                THE COURT:  So that if there is a plaintiff out there
```

1    who has a disability and applies to participate in some program
2    covered by the act but he wouldn't qualify for it, let's say, I
3    don't know -- let's just -- you keep it in the educational
4    context. Let's say it's a grad school program and he hasn't
5    received a bachelor's degree so he wouldn't be eligible to
6    enroll in a graduate level program. That's the qualification
7    Aquinas is talking about?
8                 MS. SETTERINGTON: Agreed.
9                 THE COURT: Qualified to participate in the program in
10   this case qualified -- otherwise qualified to enroll as a
11   student at Aquinas?
12                MS. SETTERINGTON: That is correct.
13                THE COURT: Okay.
14                MR. BRUNEAU: I'd like to respond to Defense argument
15   if I could?
16                THE COURT: Yup.
17                MR. BRUNEAU: Let's see. How did it begin? She was
18   saying that the college has standards, academic standards, and
19   if Bruneau doesn't meet them then we can exclude him just like
20   we can exclude any applicant. Well, the thing about that is I
21   applied to Aquinas College back in 1987. I was accepted to
22   Aquinas College in 1987. I attended Aquinas College for
23   several semesters after that application was accepted, and I
24   was confirmed as a student and I was enrolled as a student. I
25   worked hard as a student and I got decent grades as a student.

1  Okay.  So we are not talking about me applying to Aquinas
2  College and whether or not I am going to be accepted.  I am
3  already a student.
4              THE COURT:  Which isn't easy because Aquinas is tough.
5              MR. BRUNEAU:  Sorry?
6              THE COURT:  It's not easy to get decent grades at
7  Aquinas because it's tough.
8              MR. BRUNEAU:  It is tough.
9              THE COURT:  Yeah.
10             MR. BRUNEAU:  But I was up to the challenge.  I had
11 some roadblocks, and Aquinas was nice enough to offer me some
12 flexibility with regard to being able to retake courses and
13 have certain items in the course left for later, like
14 incomplete course work done later when I was having issues.
15             And the thing is, my expulsion from Aquinas had
16 nothing to do with my academic performance.  My expulsion from
17 Aquinas had to do with medication compliance or their
18 perception of my medication compliance, and my, you know,
19 agreements with various, you know, administrators about how a
20 person with a mental disability should engage himself at
21 campus.
22             As far as the nature of the expulsion itself, I
23 believe the expulsion was discriminatory.  I believe there was
24 no basis for it.  And then afterward I applied to have that
25 expulsion rescinded.  Aquinas set forth some guidelines and

1  said, okay, in order to rescind this expulsion we are going to
2  need this, this, this, this and this.  So I worked at providing
3  them this, this, this, this and this.  And it happened to be,
4  you know, some course work at other colleges before I could
5  come back to Aquinas.  I even got that course work finally done
6  and Aquinas said, you know what, we are not going to let you
7  back anyway.  So here we are.
8              THE COURT:  Okay.  Well, I --
9              MS. SETTERINGTON:  Judge?
10             THE COURT:  Ms. Setterington, you know, I don't -- the
11 background, I mean, it's interesting and it's helpful, but I
12 think maybe now I've got the question that I needed answered
13 answered, and so why don't we just move to the issue that
14 brings us together here today, and that is the specific
15 discovery request, which I understand to be interrogatories 3,
16 9 and 11, document requests 3 and 4.  Am I right on that,
17 Ms. Setterington?
18             MS. SETTERINGTON:  That is correct.
19             THE COURT:  Mr. Bruneau?
20             MR. BRUNEAU:  Interrogatories 3, 9 and 11 from which
21 side?
22             THE COURT:  Theirs to you.  These are all having to do
23 with discovery requests that they sent to you.
24             MR. BRUNEAU:  Okay.  So these -- this is discovery
25 related to criminal matters, correct?

1   THE COURT: I am going to go through them so you won't
2   have to guess about them. I've got them right in front of me.
3   So interrogatory 3 Aquinas asks you, have you ever been a party
4   to a lawsuit or any other legal proceeding whether civil or
5   criminal, including Workers' Compensation or arbitration, other
6   than the present lawsuit? If so, state the name of each case,
7   the court in which the matter was/is pending and the date and
8   manner of disposition of the case.
9   I can tell you, Mr. Bruneau, that asking the opposing
10  party about, and particularly plaintiffs, whether they have
11  been in litigation before is a standard question.
12  MR. BRUNEAU: Okay.
13  THE JUDGE: I mean, in almost every case. So I don't
14  see a problem there with this exception, which is going to be
15  the basis -- really the basis of my ruling. And that is
16  whether you have been a party to a criminal case, I am going
17  to -- which also comes up in the next -- let us move to the
18  next interrogatory then, No. 9. State whether you have ever
19  been arrested, entered a plea of guilty or been convicted of
20  any crime. If so state the date of arrest and/or conviction
21  and the location of the arrest and/or conviction and the law
22  enforcement agency involved in the arrest.
23  I don't think arrests -- I am going to disallow
24  information regarding arrests. I am going to order you to
25  produce information responding to all these about convictions.

1   Convictions can be admissible and relevant.  And let me back up
2   one second, Mr. Bruneau.  Okay?
3           This information that I am going to order you to
4   produce is discoverable.  That means Aquinas is entitled to see
5   it, but that doesn't mean that if this case goes to trial it's
6   admissible at trial.  That is a separate question which would
7   be answered at a later date, and in this case probably answered
8   by Judge Maloney.  But -- so what we are talking about today is
9   not admissibility at trial.  It's discoverability, if you will.
10  So I am --
11          MR. BRUNEAU:  Okay.
12          THE COURT:  It's going to be my ruling that evidence
13  of arrests is not discoverable.  Evidence of convictions is
14  discoverable.  It can be relevant to things like credibility.
15  It could be relevant to things like in this case availability.
16  It could be relevant to conduct that Aquinas -- could run afoul
17  of Aquinas's policy with respect to, you know, students who are
18  admitted -- Aquinas's position is, we want to admit students
19  who don't pose a risk to other students or themselves or the
20  staff.  Seems totally reasonable to me.  So an applicant who
21  has a long history of, you know, of convictions of crimes of
22  violence or something like that, you know, maybe that's a
23  legitimate reason for Aquinas to say no.  Now, I am not saying
24  that it is or it isn't.  I'm just saying it might be.  So I
25  think all of that is fair game for discovery.  So with respect

```
 1         to 2 --
 2                  MS. SETTERINGTON:  Judge Kent?
 3                  THE COURT:  Yes.
 4                  MS. SETTERINGTON:  I apologize, but before we get too
 5         far away from that point I would like to raise one issue for
 6         you.
 7                  THE COURT:  Sure.
 8                  MS. SETTERINGTON:  It's becoming clear in
 9         Mr. Bruneau's medical records and from his deposition that he
10         has many -- apparently the record suggests that he has many
11         instances where he has run-ins with law enforcement and in
12         Canada is allowed to enter a diversion program because of his
13         mental illness.  I understand your point about the relevance of
14         convictions when it comes to, you know, making decisions, but
15         we're also running into the direct threat defense.  And if I
16         don't get to know anything about the multiple situations in
17         which he has had assaultive behavior or other criminal behavior
18         that he was excused from under the eyes of the law because of
19         his mental disability, I don't think that allows me to do
20         discovery about whether he is actually safe to have on a
21         college campus environment.  Things like he head butted a
22         constable in 2020.  He got into an assault situation with
23         somebody on the subway about riding a bike, that person riding
24         a bike and Mr. Bruneau having some charges for assault pending.
25         In the 1990's he was found not guilty by reason of insanity
```

1  after he drove a car through a Shawmut Hills dealership here in
2  Grand Rapids and took a baseball bat to motorcycles and lawn
3  mowers and such.
4      Mr. Bruneau was also charged with open murder. Now,
5  that charge was ultimately dismissed, as well. That may not be
6  something I am ever able to admit, but I do think in this
7  particular case the evidence of arrest, if they wound up going
8  through a mental illness diversion program, may still be
9  relevant.
10     THE COURT: Okay. Here is how --
11     MR. BRUNEAU: I am kind of curious how Defense is
12 getting ahold of this Canadian information about charges that
13 result in a diversion program.
14     THE COURT: I don't know the answer to that.
15     MR. BRUNEAU: What's their source for that?
16     MS. SETTERINGTON: Mr. Bruneau, your medical records
17 contain references to this, these situations that you have
18 provided to your medical providers. I don't have the details
19 of them. I have your statements to them and your doctor's
20 notations in the records.
21     THE COURT: Here is how --
22     MR. BRUNEAU: That seems pretty specific to be in
23 medical records.
24     THE COURT: All right. Mr. Bruneau. Mr. Bruneau.
25 Here is how we're going to split the baby on that issue.

**1**   MR. BRUNEAU:  Okay.

**2**   THE COURT:  Evidence of arrests arising from
**3** allegations of violence you will produce because I think those
**4** are fair game for the reasons that I outlined earlier with
**5** respect to Aquinas's admission policy for all students, not
**6** just you, but for everybody.  So -- but other arrests.  I don't
**7** know, I mean, if you have arrests for -- arrests that did not
**8** result in convictions for crimes other than crimes involving
**9** violence you don't have to produce those.

**10**   Moving to 11, evidence of incarceration --

**11**   MR. BRUNEAU:  Okay.

**12**   THE JUDGE:  -- between January 1990 and the present,
**13** and Ms. Setterington, why are we going back to 1990?

**14**   MS. SETTERINGTON:  Because Mr. Bruneau claims that he
**15** was expelled in 1990, and he claims that since that time he has
**16** been denied the ability to come back to Aquinas.  And I -- as
**17** part of this case, he is claiming that he is able to conduct
**18** himself in a stable and appropriate manner.  I don't know
**19** whether, how many of the years between 1990 and the present he
**20** spent incarcerated and not in the general population.

**21**   THE COURT:  Right.  Well, hopefully not years but I
**22** think that's a fair question.  If you are not -- you know, if
**23** you are -- if you are incarcerated obviously you are not
**24** available to be a student.  So I think that's a fair question.

**25**   MR. BRUNEAU:  I was actually in a college program as

**1**     part of a prison sentence.

**2**             THE COURT:  While you were incarcerated?  Interesting.

**3**             MR. BRUNEAU:  I did get a business degree while at --
**4**     in Marion Correctional.

**5**             THE COURT:  Well, good.  And con -- good for you.
**6**     That's using -- turning a bad situation into something
**7**     positive.

**8**             Document request No. 3.  Any and all docs in your
**9**     possession relate -- from possession control related to your
**10**    arrest by Grand Rapids Police.  I read your response.  You say
**11**    campus police reports should be sufficient.  I disagree.  But
**12**    my question is, Ms. Setterington, why can't you just get this
**13**    information directly from GRPD?

**14**            MS. SETTERINGTON:  We have a copy of a police report
**15**    from GRPD.  What Mr. Bruneau is describing to me in terms of
**16**    the documentation he has is different than what I have.

**17**            THE COURT:  I thought --

**18**            MS. SETTERINGTON:  I don't know what he has.

**19**            THE COURT:  I thought --

**20**            MS. SETTERINGTON:  I just want to see it.

**21**            THE COURT:  Yeah.  I thought what he was saying what
**22**    he had was the campus police report.  Am I wrong --

**23**            MS. SETTERINGTON:  He -- he --

**24**            THE COURT:  -- Mr. Bruneau?

**25**            MR. BRUNEAU:  I have both documents.  The campus

**1** report I have has names redacted, but I do have both those

**2** documents. I think there might be some variance between her

**3** copy of the GRPD report and mine, but it may not be significant

**4** variance. It may be just page formatting or something.

**5** THE COURT: Okay. Well, produce those. I mean, let's

**6** get all the -- all the documents on the table. Everybody is

**7** working from the same information.

**8** MR. BRUNEAU: Speaking of getting all the documents on

**9** the table, I was surprised at my deposition because Defense had

**10** a number of documents that I thought would have been already

**11** shared in the initial document exchange. So I am seeing new

**12** documents at the deposition. I thought they were all -- they

**13** would have all come out by then but seeing new documents, well,

**14** there is documents I don't have. So can I have those, as well?

**15** THE COURT: I don't know what these guys --

**16** MS. SETTERINGTON: Judge Kent? Yeah. That's a

**17** separate issue that I shared that with Mr. Bruneau. We have

**18** provided everything that we voluntarily agreed to provide and

**19** that he asked for.

**20** MR. BRUNEAU: I thought the voluntary agreement meant

**21** everything we have. That's why I provided everything I had at

**22** that time. All the correspondence back and forth from Aquinas.

**23** And then at the deposition I'm like, wow, okay. Well, I guess

**24** it wasn't everything because they didn't think it was

**25** everything. I did.

|   |   |
|---|---|
| 1 | THE COURT: Well, Ms. Setterington -- |
| 2 | MR. BRUNEAU: So now -- |
| 3 | MS. SETTERINGTON: Judge -- Judge Kent, we did a Rule |
| 4 | 26(a) disclosures. Sorry. |
| 5 | THE COURT: Okay. You have produced everything you |
| 6 | were obligated to produce under 26? |
| 7 | MS. SETTERINGTON: Correct. |
| 8 | THE COURT: All right. I don't know what -- if there |
| 9 | is some additional agreement, Mr. Bruneau. If there was, then |
| 10 | you should bring that in the form of a motion just like Aquinas |
| 11 | has done that brought us here today. |
| 12 | MR. BRUNEAU: All right. |
| 13 | THE COURT: And it'll probably get referred to me by |
| 14 | Judge Maloney and I'll make a decision on it. |
| 15 | MR. BRUNEAU: We're going to get into the second |
| 16 | phase -- |
| 17 | THE COURT: Moving to document request No. 4, this is |
| 18 | really, I guess, the document request equivalent of |
| 19 | interrogatory 9, so my ruling on 9 and 4 would be the same and |
| 20 | that would be documents related to any criminal charges or |
| 21 | proceedings involving allegations of violence. |
| 22 | And then any conviction records -- just so we're |
| 23 | clear, Mr. Bruneau, let's say you were convicted of |
| 24 | shoplifting, you know, in 2000. Convicted, okay? Those |
| 25 | records I want you to produce because they are conviction |

```
 1    records.  If you were charged with shoplifting in 2000 and not
 2    convicted, then you don't have to produce those records if it
 3    was just an arrest and it got dismissed or nolle prossed or
 4    whatever for some reason.  Are you clear on the difference?
 5              MR. BRUNEAU:  Yes.
 6              THE COURT:  Okay.  All right.  I think that's it from
 7    my perspective.  Anything else we should talk about while we
 8    are together?  Mr. Bruneau?
 9              MR. BRUNEAU:  I don't have anything except this --
10    this -- this hearing will be written up, right, so I can access
11    for orders?
12              THE COURT:  It is -- these proceedings -- I don't have
13    a court reporter.  Judge Maloney has a court reporter.  So
14    these proceedings are recorded, and you can request --
15              Ms. Carpenter, is it -- what do they get if they
16    request a copy?
17              THE CLERK:  You'd go to the court's website and you
18    make a formal request through the court's website for a
19    transcript.
20              THE COURT:  Okay.
21              THE CLERK:  And then the audio recording will go to a
22    court reporter, a certified court reporter, who will transcribe
23    and then prepare --
24              THE COURT:  A transcript.
25              THE CLERK:  -- from the audio recording, but it costs
```

```
 1    money and --
 2            THE COURT:  Yup.
 3            THE CLERK:  And it will require prepayment.
 4            THE COURT:  Okay.
 5            THE CLERK:  There is a fee sheet for that.
 6            THE COURT:  All right.  Is that fee sheet on the
 7    website or attached to the website?
 8            THE CLERK:  It should be.
 9            THE COURT:  Okay.
10            THE CLERK:  It typically runs about $4 a page.  Each
11    page per every minute of the hearing.
12            THE COURT:  A page per minute?
13            THE CLERK:  A page per minute.
14            THE COURT:  So how long have we been going?
15            THE CLERK:  We have been on the record since 11:04.
16            THE COURT:  So call it 25ish minutes at 25 pages -- so
17    a hundred bucks roughly.  Mr. Bruneau?
18            IT TECHNICIAN:  Yeah.  We lost Mr. Bruneau just as you
19    and Ms. Carpenter were talking.
20            THE COURT:  Okay.  Ms. Setterington, I assume nothing
21    else from you since we can't have ex parte communications.
22            MS. SETTERINGTON:  Thank you very much.
23            THE COURT:  You are welcome.  Have a good day.
24            MS. SETTERINGTON:  You, too.
25            (Proceeding concluded, 11:29 a.m.)
```

C E R T I F I C A T E

I certify that the foregoing is a transcript from the Liberty Court Recording System digital recording of the proceedings in the above-entitled matter to the best of my ability.

/s/
Paul G. Brandell, CSR-4552, RPR, CRR
U.S. District Court Reporter
399 Federal Building
Grand Rapids, MI   49503