UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOSEPH BRUNEAU,                              Case No. 1:19-cv-01037-PLM-RSK

             Plaintiff,                 Honorable Paul L. Maloney

v.

AQUINAS COLLEGE,

             Defendant.

---

Joseph Bruneau, Plaintiff pro se          Stephanie R. Setterington (P58177)
5020 Carson Ave., S.W.                    Varnum LLP
Grand Rapids, MI  49548                   Attorneys for Defendant
(616) 238-8558                            Bridgewater Place, P.O. Box 352
joe_bruneau@yahoo.com                     Grand Rapids, MI  49501-0352
                                          (616) 336-6466
                                          srsetterington@varnumlaw.com

---

**<u>DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY DISPOSITION</u>**

**TABLE OF CONTENTS**

**Page**

INDEX OF AUTHORITIES ................................................................................ iii

I.      INTRODUCTION .................................................................................1

II.     STATEMENT OF UNDISPUTED FACTS ...........................................3

      A.      Background Regarding Aquinas College................................................3

      B.      1987:  Plaintiff's Application and Enrollment as an Aquinas Student...................4

      C.      1988:  Plaintiff's First Psychotic Episode and College Efforts to Assist ...............5

      D.      1988:  Plaintiff's Diagnosis, Treatment Recommendation, and Decision to Stop Treatment..........................................................................5

      E.      1989:  Plaintiff's Second Psychotic Episode and College Efforts to Assist............6

      F.      1989:  Plaintiff's Suffering Academic Performance .................................7

      G.      September 1989: Plaintiff's Return to Campus and Student Conduct Code Violation ................................................................................8

      H.      January 1990:  Plaintiff's Third Psychotic Episode and College Efforts to Assist................................................................................8

      I.      September 1990:   Plaintiff's Fourth Psychotic Episode at Aquinas, Inappropriate Conduct, and Suspension Pending Confirmation of Fitness to Return....................................................................9

      J.      September 1990:  The College Grants Reinstatement to Plaintiff........................11

      K.      September 1990:   Plaintiff's Fifth Psychotic Episode at the College, Inappropriate Conduct, and Expulsion .................................11

      L.      1990-1994:  Plaintiff's Efforts to Have the Expulsion Rescinded .......................13

      M.      February 10, 2016: Plaintiff's Incident on Aquinas' Campus ..............................14

      N.      Plaintiff's Arrest and Detention for Trespassing....................................16

      O.      February 11, 2016:  Aquinas Issues Plaintiff a No Trespass Order......................16

      P.      May 2016:  Plaintiff's Conviction for Trespassing at Aquinas ...........................17

Q.     2017-2019:    Plaintiff's Efforts to Have the "No Trespass" Restrictions Lifted, and Present Lawsuit ..................................................................17

R.     Plaintiff's 1994-Present Criminal History and Obstruction of Discovery Regarding Same ......................................................................................18

S.     Plaintiff's Record of Treatment Noncompliance and Current Status...................20

III.     STANDARDS FOR MOTION FOR SUMMARY JUDGMENT....................................20

IV.     ARGUMENT ..........................................................................................................21

A.     Arguments Related to All Time Periods..............................................................21

1.     Plaintiff's Claims Are Time-Barred ...................................................21

2.     Plaintiff Cannot Establish the Elements of His Claims Under the Statutes .............................................................................................22

a.     Plaintiff is Not a "Qualified Individual\..........................................23

b.     Aquinas Provided Equal Access and Satisfied Any Duty of Reasonable Modification ..............................................................24

37c.     Aquinas' Actions Toward Plaintiff Were Not "Because of" or "Solely by reason of" Disability .................................................25

3.     Plaintiff's Claims are Barred by the Direct Threat Defense.......................27

B.     Arguments Related to 1988-1990 Events ...........................................................29

1.     Plaintiff's Claims are Barred by a Prior Settlement of his OCR Charge .................................................................................................29

2.     Plaintiff's ADA Claims Related to his Expulsion are Barred because they Pre-Date the Statute ...................................................................30

C.     Arguments Related Only to 2016 Incident ..........................................................30

1.     Plaintiff Made No Request for Modification Due to Disability ...............30

V.     CONCLUSION.......................................................................................................31

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(b)(i) ........................................32

CERTIFICATE OF SERVICE ..................................................................................................33

ii

# INDEX OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Alexander v. CareSource*, 576 F.3d 551 (6th Cir. 2009) ........................................................ 20, 21

*Boyle v. Brown Univ.,* 881 F. Supp. 747 (D. Rhode Island 1995) ................................................. 30

*Bragdon v. Abbott,* 524 U.S. 624; 118 S.Ct. 2196; 141 L.Ed.2d 540 (1998) ............................... 27

*Collins v. Blue Cross Blue Shield of Michigan,* 228 Mich. App. 560 (1998) ........................ 26, 27

*Crancer v. Board of Regents of the University of Michigan,*
    156 Mich. App. 790 (Mich. App. 1986) ............................................................................ 23

*Doe v. Woodford County Bd. of Educ.,* 213 F.3d 921 (6th Cir. 2000) .................................... 27, 28

*Doherty v. Southern College of Optometry,* 862 F.2d 570 (6th Cir. 1988) ............................ 23, 25

*Jakubowski v. Christ Hospital, Inc.,* 627 F.3d 195 (6th Cir. 2010) ............................................. 25

*Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369; 124 S.Ct. 1836; 158 L.Ed.2d 645 (2004) ... 21

*Kaltenberger v. Ohio College of Podiatric Medicine,* 162 F.3d 432 (6th Cir. 1998) ............. 23, 30

*Lewis v. Humboldt Acquisition Corp., Inc.*,  681 F.3d 312 (6th Cir. 2012) ................................. 25

*Maddox v. Univ. of Tennessee,* 62 F.3d 843 (6th Cir. 1995) ........................................................ 26

*McCormick v. Miami University*, 693 F.3d 654 (6th Cir. 2012) .................................................... 21

*McGregor v. Louisiana State*, 3 F.3d 850 (5th Cir. 1995) ............................................................ 30

*Mershon v. St. Louis University,* 442 F.3d 1069 (8th Cir. 2006) .................................................. 23

*North Star Steel Co. v. Thomas*, 515 U.S. 29; 115 S.Ct. 1927; 132 L.Ed.2d 27 (1995) ............... 21

*Peden v. City of Detroit,* 470 Mich. 195; 680 N.W.2d 857 (Mich. 2004) .................................... 26

*Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.*,
    452 Mich. 309; 550 N.W.2d 228 (1996).............................................................................. 29

*Reicher v. SET Enterprises,* 283 Mich. App. 657 (2009) ............................................................. 29

*Sandison v. Michigan High Sch. Athletic Ass'n, Inc.,* 64 F.3d 1026 (6th Cir. 1995) ................... 23

*Sevier v. Turner,* 742 F.2d 262 (6th Cir. 1984).............................................................................. 21

*Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547 (7th Cir. 1996) .................................. 22

*Stanciel v. Donahoe,* 570 Fed. Appx. 578 (6th Cir. 2014) ......................................... 26

*UAW-GM Human Resources Ctr. v. KSL Recreation Corp.,*
    228 Mich. App. 486; 579 N.W.2d 411 (1998).................................................. 29

*Walbridge Aldinger Corp. v. Walcon Corp.,* 207 Mich. App. 566 (1994) .................................. 29

*Wurzel v. Whirlpool Corp.,* 482 Fed. Appx. 1 (6th Cir. 2012) .................................... 27

**<u>Statutes</u>**

42 U.S.C. § 12182(b)(3) ................................................................. 27

MCLA § 37.1402 ........................................................................ 26

MCLA § 600.5805 ....................................................................... 21

**<u>Other Authorities</u>**

I. PL 101–336, July 26, 1990, 104 Stat 327................................................ 30

**<u>Rules</u>**

Fed. R. Civ. P. 56(a) .................................................................. 20

## I.     <u>INTRODUCTION</u>

Plaintiff is a former student of Aquinas College ("Aquinas") who attended in the late eighties to 1990.  Shortly after he began attending Aquinas, Plaintiff developed a mental disorder causing him to experience serious psychotic episodes in which he became "out of touch with reality," experienced delusions, became suicidal and/or disruptive, and became unable to function as a student for extended periods.  Plaintiff's treatment providers prescribed medications for him to manage his condition, but Plaintiff repeatedly decided to stop such medications against his providers' recommendations.

Aquinas made several accommodations and modifications to its policies and procedures during Plaintiff's tenure. Ultimately, however, given Plaintiff's refusal to abide by his treatment provider's recommendations, the accompanying risk of harm his repeated behaviors presented, and the impact on his ability to sustainably participate in college activities, he was expelled in 1990.

Over 25 years later, Plaintiff appeared on Aquinas' campus the evening of February 10, 2016.  Although his identity was not known to Aquinas personnel or students, Plaintiff was observed wandering around campus, attempting to gain access to College buildings, and disrupting students in a classroom and in the library.  Several reports of concerning, disruptive behavior by Plaintiff were received, prompting Campus Safety officers to respond.

Campus Safety personnel requested Plaintiff to leave the campus and offered to assist him with transport.  Plaintiff's behavior became more erratic and unreasonable, and he would not comply with requests that he leave, prompting Aquinas to contact the Grand Rapids Police Department for assistance.  Plaintiff was ultimately arrested for trespass, and later convicted of this offense.

As a result of Plaintiff's actions that evening, which included inappropriate sexual comments and overtures to Aquinas students and personnel and the discovery of sexual and bondage paraphernalia in his belongings upon his arrest, and information that subsequently came to Aquinas' attention regarding Plaintiff's involvement with the criminal justice system, Aquinas issued Plaintiff a "no trespass" order barring him from returning to the campus.  Plaintiff made several demands that the order be lifted, on the basis that he did not commit the acts attributed to him.  Aquinas declined to modify or lift the order.

On December 10, 2019, Plaintiff filed suit against Aquinas alleging that both its expulsion of him in 1990 and its issuance of and refusal to lift the "no trespass" order in 2016 violated the Americans with Disabilities Act, the Rehabilitation Act, and the Michigan Persons with Disabilities Civil Rights Act. Plaintiff's claims are barred in their entirety by the statute of limitations, whether arising out of the 1988-90 time period or the 2016 incident.  All claims are also barred because: Plaintiff is not and was not a qualified individual as required to support his claims; accommodation or modification duties under the statutes were satisfied; Aquinas' actions were not taken because of disability, and they are barred by the "direct threat" defense applicable to the statutes at issue.  Plaintiff's claims regarding the 1990 expulsion are further barred by his prior voluntary resolution of such claims.  The ADA claim regarding Plaintiff's 1990 expulsion is also barred because the events precede the ADA Title III's effective date.  Regarding the 2016-based claims, such claims are barred not only for the generally applicable reason outlined above, but also because Plaintiff did not make any request for modification based on a disability.

## II.   <u>STATEMENT OF UNDISPUTED FACTS</u>

**A.**   **Background Regarding Aquinas College**

1.      Aquinas College is a private, in-person, Catholic college rooted in the Dominican tradition.  (Aquinas Mission and Vision, Ex. 1.)

2.      It is the policy of Aquinas College that no person on the basis of race, color, religion, ethnic origin, age, sex, sexual orientation, marital status, or disability shall be discriminated against, excluded from participation or employment in, or be otherwise subjected to discrimination under any program or activity for which Aquinas College is responsible.  (*Id.*)

3.      The College is committed to providing equal access to its programs to individuals with disabilities. (Accessibility Services Mission Statement, Ex. 2.)

4.      All candidates seeking to enroll at Aquinas must meet qualifications for admission, information regarding which is requested on the College's application for admission.  (Application, Ex. 3.)

5.      A candidate's prior academic performance and prior conduct is considered, including prior disciplinary and any applicable criminal history.  (*Id.*)

6.      Regarding criminal history, the College requires applicants to complete an application for admission which asks the following questions:

> *Have you ever been convicted of a felony or misdemeanor, other than minor traffic offenses?*

> *Are there criminal charges pending against you at this time?*

(*Id.;* Defendant's Response to Plaintiff's First Interrogatories, No. 6, Ex. 4.)

7.      Applicants who respond to either of these questions affirmatively are asked to provide further detail regarding the offenses and/or charges and the relevant circumstances.  (*Id.*)

8.       Such applications and additional information are submitted for the College's review and consideration of whether additional information is needed, and/or for a determination as to whether or not the criminal history renders the candidate ineligible for an offer of admission.  (*Id.*)

9.       Such determination is a multi-factored process which considers information such as the nature of the criminal offense(s), the time frame in which such offense(s) occurred, the status of the offense(s), the number of offense(s), evidence of rehabilitation, safety considerations, and any other aggravating or mitigating factors that may be present.  (*Id.*)

10.       Between 2017 and 2020, four applicants to the College disclosed crimes involving assault or disorderly conduct nature. (*Id.* at No. 2; Summary of Applicant Disclosures, Ex. 5.) None of these candidates were offered admission.   (*Id.*)

**B.       1987:  Plaintiff's Application and Enrollment as an Aquinas Student**

11.       Plaintiff applied for admission to Aquinas in February 1987. (Bruneau Application, Ex. 6.)

12.       Plaintiff has never, at any time to the present, submitted any other application for enrollment to Aquinas.  (Plaintiff Dep., Ex. 7, at 16.)

13.       Plaintiff was accepted for admission and enrolled at Aquinas in August or September 1987. (*Id.*)

14.       Plaintiff last attended Aquinas in September 1990, when he was expelled.  (*Id.* at 17.)

15.       In the interim period, Plaintiff enrolled for classes at Aquinas College each year on a full-time basis except for the absence periods outlined below.  (Final Transcript, Ex. 8.)

**C.      1988:  Plaintiff's First Psychotic Episode and College Efforts to Assist**

16.      In February 1988, Plaintiff experienced a psychotic episode at the College. (Plaintiff Dep., Ex. 7, at 41.)

17.      Plaintiff states there were no apparent triggers for the episode; and that there was nothing occurring in his environment that "a person attending college would consider abnormal." (*Id.* at 45.)

18.      Plaintiff describes the episode as an escalation of symptoms in which Plaintiff could not sleep, and ultimately began experiencing severe delusions and paranoid and suicidal thoughts. (*Id.* at 29-30, 44.)

19.      Aquinas College's Campus Safety personnel and a member of the counseling staff assisted Plaintiff and called for emergency medical assistance.  (*Id.* at 30.)

20.      Plaintiff was taken first to St. Mary's Hospital, and from there transferred to the Coldwater Regional Mental Healthcare facility, where he remained until April 22, 1988, when he was then released to an outpatient treatment facility in Hillsdale, Michigan. (*Id.* at 46.)

21.      Aquinas allowed Plaintiff to withdraw from classes for the term in which this event occurred, permitting him to avoid academic penalty.  (*Id.* at 47; Final Transcript, Ex. 8.)

**D.      1988:  Plaintiff's Diagnosis, Treatment Recommendation, and Decision to Stop Treatment**

22.      Plaintiff was initially diagnosed with "unspecified psychosis" in connection with this episode (Plaintiff Dep., Ex. 7, at 26.)

23.      Plaintiff has subsequently received several diagnoses, but primary among them is bipolar disorder.  (*Id.* at 23.)

24.      Plaintiff states that the disorder can lead to a state of psychosis for him, which requires hospitalization and treatment in a mental health setting.  (*Id.*)

5

25.     After this initial episode, Plaintiff was prescribed Haldol by his physicians to help manage his condition and prevent the occurrence of further psychotic episodes.   (*Id.* at 27, 46.)

26.     Plaintiff took the medication initially; but decided on his own to quit taking it in the summer of 1988.   (*Id.* at 51, 59.)

27.     Plaintiff had no recommendation from any health care provider to do this.  (*Id.*)

28.     Over the years since his first hospitalization to the present, Plaintiff has routinely take the approach of discontinuing his prescribed medications, as a matter of personal choice, following his release from any period of hospitalization.  (*Id.* at 199-200.)  Plaintiff indicates that the periods in which he has been medicated can be identified by the periods in which he was hospitalized. (*Id.*)

**E.      1989:  Plaintiff's Second Psychotic Episode and College Efforts to Assist**

29.     Plaintiff sought to return to Aquinas College for the Fall 1988 semester and was permitted to do so.  (*Id.* at 47.)

30.     Plaintiff received an "Incomplete" grade in his Philosophy 101 class for the Fall semester but completed the remainder of his classes.  (Final Grade Reports, Ex. 9.)

31.     In February 1989, Plaintiff, who had unilaterally discontinued his medication, experienced another psychotic episode at Aquinas College, which resulted in him being taken to the Coldwater Mental Health facility and treated there for a number of weeks, during which time he was unable to attend classes.  (Plaintiff Dep., Ex. 7, at 48, 51.)

32.     Plaintiff returned later in that semester and completed two of his five classes for a grade, but received an "Incomplete" grade in two other classes and a "No Credit" grade in another, which resulted in academic probation.  (Final Grade Reports, Ex. 9.)

6

33.     In an effort to assist Plaintiff, the Dean of Aquinas College either advised Plaintiff or made an agreement with Plaintiff that he could request to have the grades for the two classes he was not able to complete removed from his transcript entirely based on his circumstances. (Plaintiff Dep., Ex. 7, at 63, 74-75; October 10, 1989 Letter, Ex. 10.)

34.     As a result of this request being granted, the two incomplete grades would not negatively impact Plaintiff's grade point average.  (Plaintiff Dep., Ex. 7, at 63.)

35.     In October 1989, Plaintiff made this request and the College granted it. (*Id.* at 64-65; Final Transcript, Ex. 8.)

36.     This request was made and granted outside the normal time parameters for a student to withdraw from a class.  (Course Catalogue Excerpts, Ex. 11.)

37.     Aquinas College also granted Plaintiff additional time beyond that ordinarily permitted under its policies to complete the coursework for the "Incomplete" grade in Philosophy 101 he had received in the Fall semester.  (Course Catalogue Excerpt, Ex. 11; March 4, 1989 Extension of Incomplete Grade Request, Ex. 12; April 12, 1989 Grade Change Report, Ex. 13.)

38.     As with his first hospitalization and each hospitalization since, Plaintiff was given medication in order to bring him out of his psychotic state and was prescribed medication to take on an ongoing basis to control his condition.  (Plaintiff Dep., Ex. 7, at 36, 99-100.)

**F.      1989:  Plaintiff's Suffering Academic Performance**

39.     Even with the assistance and adjustment provided by the College, Plaintiff earned a grade point average of 1.2 for the Spring 1989 semester.  (*Id.* at 65-66.)

40.     Plaintiff then took a Fiction Writing Workshop class in the summer of 1989, for which he originally received a grade of "Incomplete," but ultimately received a grade of "D."  (*Id.* at 65; Final Transcript, Ex. 8.)

**G.**      **September 1989: Plaintiff's Return to Campus and Student Conduct Code Violation**

41.      Plaintiff enrolled full time for the Fall 1989 semester.  (Final Transcript, Ex. 8.)

42.      Plaintiff completed the semester but received a disciplinary infraction for Disregard of the Directive of a College Official.  (Plaintiff Dep., Ex. 7, at 80.)

43.      Plaintiff was found to have created an unsafe condition after he entered a dormitory building in which he did not reside, observed a student he did not know sleeping in the common room, and piled cushions up around the sleeping student. (*Id.* at 76-80.)

44.      Plaintiff then refused to follow the instructions of the residence hall personnel to correct the situation, and further refused to leave the building when directed to do so.  (*Id.*)

45.      Plaintiff denies this event had anything to do with his bipolar condition.  (*Id.* at 81.)

46.      The College required Plaintiff to write an apology and an essay about the importance of following the directives of College officials.  (*Id.* at 80.)

**H.**      **January 1990:  Plaintiff's Third Psychotic Episode and College Efforts to Assist**

47.      In January 1990, Plaintiff experienced a third psychotic episode while enrolled at the College. (January 22, 1990 Letter to Professors, Ex. 14.)

48.      Plaintiff does not have a recollection of the incident.  (Plaintiff Dep., Ex. 7, at 89.)

49.      Plaintiff does not dispute that he had again discontinued taking the prescribed medicine at some point following his release from his second hospitalization.  (*Id.* at 104.)

50.      Plaintiff was hospitalized and incurred an extended absence from classes. (January 22, 1990 Letter to Professors, Ex. 14; Plaintiff's Interrogatory Response No. 12, Ex. 15.)

51.      Plaintiff dropped one of his four classes for this semester: "Intro to Social Work." (Spring 1990 Class Listing, Ex. 16.)

52.     Plaintiff originally received a grade of "No Credit" for "Nature Study," a grade of "Incomplete" for "Dimensions of Being Human," and a grade of "B" for "Conditioning II." (May 24, 1990 Final Grade Report, Ex. 17.)

53.     The College permitted Plaintiff to complete his coursework for "Dimensions of Being Human" late, and to receive a "B+" grade.  (Final Transcript, Ex. 8; March 11, 1991 Grade Change Report, Ex. 18.)

54.     Plaintiff denies his grade of "No Credit" in Nature Study was a result of his condition. Rather, he states he received this grade because of "laziness." (Plaintiff Dep., Ex. 7, at 90.)

## I.     September 1990:  Plaintiff's Fourth Psychotic Episode at Aquinas, Inappropriate Conduct, and Suspension Pending Confirmation of Fitness to Return

55.     Plaintiff was off during the summer months and returned to Aquinas in August 1990 for the Fall semester.  (*Id.* at 92.)

56.     Plaintiff experienced a fourth psychotic episode almost immediately upon his return, in which he engaged in disruptive, erratic, and admittedly inappropriate behavior in the school's cafeteria.   (*Id.* at 93.)

57.     Plaintiff recalls he "jumped off a table" in the cafeteria but acknowledges his recollection of the event is "foggy." (*Id.* at 94.)  While witnesses are no longer available, College records indicate Plaintiff "tripped out" in the cafeteria, made strange comments toward a cafeteria worker, was disheveled and "covered with burrs" from the knees down, and that his parents were contacted for assistance.  (Campus Safety Report, Ex. 19.)

58.     Plaintiff was hospitalized for a period of approximately 17 days following this incident.  (Plaintiff's Interrogatory Response No. 12, Ex. 15.)

59.     About a week into his treatment, Plaintiff attempted to leave the hospital "AMA" (against medical advice), but his mother had him involuntarily committed.  (Plaintiff Dep., Ex. 7, at 108.)

60.     As of this time, Plaintiff had just again engaged in concerning conduct at the school and had to leave campus in the midst of classes.  Plaintiff had experienced several instances previously, and Aquinas College was aware of at least two prior instances in which Plaintiff had stopped taking the medication that had been prescribed to him by his doctors, each of which had resulted in a serious incident for Plaintiff in which he had experienced a further psychotic episode. (September 6, 1990 Letter, Ex. 20.)

61.     Under Aquinas' policies in effect at the time, "In emergencies, where the chief student personnel officer determines there to be danger of imminent harm to persons or property … the chief student personnel officer may summarily suspend or expel a student."  (Course Catalogue Excerpts, Ex. 11.)

62.     The College considered Plaintiff's behavior to pose serious harm to himself, and to require input from Plaintiff's medical provider prior to him being allowed to return to campus. (September 6, 1990 Letter, Ex. 20.)

63.     On September 6, 1990, Plaintiff was suspended from the College pending evidence from a psychologist that he was ready to return to college and had received treatment.  (*Id.*)

64.     Plaintiff was advised that, should his medical providers determine ongoing treatment was necessary, Plaintiff's receipt of such treatment may become a condition of his reinstatement.  (*Id.*)

**J.      September 1990:  The College Grants Reinstatement to Plaintiff**

65.     After completing his period of hospitalization, Plaintiff sought re-admittance to Aquinas.  (September 17, 1990 Reinstatement Communications, Ex. 21.)

66.     Plaintiff provided a doctor's letter stating he was ready to return and committed to complying with his treatment recommendations.  (*Id.*)

67.     The College considered this information and granted Plaintiff's request.  (*Id.*)

68.     Plaintiff's reinstatement was subject to the condition that he comply with his doctor's treatment recommendations and that he allow a release of information to confirm this.  (*Id.*)

69.     Plaintiff agreed to this arrangement.  (*Id.;* Plaintiff Dep., Ex. 7, at 105)

70.     Plaintiff's doctors had prescribed Lithium or another medication to Plaintiff in his most recent hospitalization, which Plaintiff was to continue taking following his release from the hospital.  (Plaintiff Dep., Ex. 7, at 112.)

**K.      September 1990:  Plaintiff's Fifth Psychotic Episode at the College, Inappropriate Conduct, and Expulsion**

71.     Plaintiff returned to Aquinas College sometime around or after September 17, 1990.  (*Id.* at 105; September 17, 1990 Reinstatement Communications, Ex. 21.)

72.     Shortly after his return to campus, however, Plaintiff again took himself off the medication his doctors prescribed for him. (Plaintiff Dep., Ex. 7, at 112-113.)

73.     Between September 25 and September 26, 1990 Plaintiff was involved in a series of incidents in which he engaged in erratic, incoherent, and disruptive behavior on the campus. These events involved Plaintiff engaging in argumentative and combative confrontations with faculty and staff, sometimes while wearing a fencing foil; Plaintiff taking the bicycle of a young child and riding it around, prompting the child to seek an employee's assistance to get his bicycle

11

back; Plaintiff fishing a large telecommunications spool out of a creek and attempting to bring it into the dormitory; and other actions.  (September 25, 26, and 28 Incident Reports, Ex. 22)

74.     On the evening of September 25, 1990, a former student of Aquinas telephoned an employee of the College and reported that Plaintiff had contacted her and informed her he was off or almost off his medication.  (*Id.*)

75.     On September 26, 1990, Plaintiff disrupted a soccer game by running out onto the field with his fencing foil, shouting Shakespeare and yelling at the opposing team's players. (September 26, 1990 Campus Safety Report, Ex. 23.)

76.     Plaintiff refused to leave the soccer field when Campus Safety personnel attempted to get him to do so.  (*Id.*)

77.     The College contacted Plaintiff's mother, who requested that the Grand Rapids Police be called as she would not be able to get Plaintiff to return to the hospital.  (*Id.*)

78.     When the Grand Rapids Police did arrive, their assistance was required to subdue Plaintiff, who resisted leaving and attempted to grab his fencing foil in the process of a physical struggle to remove him.  (*Id.*; Plaintiff Dep., Ex. 7, at 133.)

79.     The College determined that Plaintiff's behavior was again inappropriate and indicative of a risk of harm, that he had violated the conditions of his return to the school, and that there was nothing more the school could do to assist the situation in light of Plaintiff's disregard of his doctors' treatment instructions.  (September 26, 1990 Letter, Ex. 24.)

80.     Plaintiff was therefore expelled on September 26, 1990.  The expulsion letter specified "<u>Expulsion is permanent and under no circumstances will you be readmitted.</u>"  (*Id.*)

81.     Plaintiff was informed of his right to appeal the decision within seven days.  (*Id.*)

82.     Aquinas reduced Plaintiff's tuition charges to zero for the semester.   (Notation Regarding 0% Tuition Charge, Ex. 25.)

**L.     1990-1994:  Plaintiff's Efforts to Have the Expulsion Rescinded**

83.     Plaintiff was hospitalized for a period of several months after this incident. (Plaintiff Dep., Ex. 7, at 141.)

84.     Following his release, Plaintiff made several attempts to be permitted to return to Aquinas, which the College considered (despite the expiration of the seven-day appeal time frame), but the College did not rescind its decision.  (*Id.* at 141-142.)

85.     At some point prior to 1993, Plaintiff filed a Charge with the United States Department of Education, Office of Civil Rights regarding his expulsion and desire for re-admittance to Aquinas. (*Id.* at 148.)

86.     In August 1993, Plaintiff resolved that Charge through a voluntary settlement agreement with Aquinas College.  (*Id.* at 149; August 26, 1993 Letter Resolution Agreement, Ex. 26.)

87.     Under the agreement, Plaintiff authorized disclosure of his records and review of his situation by a mental health professional designated by the College, for the College's further consideration of whether to rescind his expulsion.  (Plaintiff Dep., Ex. 7, at 150-151.)

88.     Plaintiff accepted those terms to resolve his Charge.  (*Id.* at 152.)

89.     The mental health professional's evaluation was conducted, but it did not result in a change to Plaintiff's status at Aquinas.  (January 6, 1994 Letter, Ex. 27.)

90.     The psychologist who evaluated Plaintiff opined that Plaintiff could not currently return to school without presenting a threat to himself or others.  (January 7, 1994 Dr. Boyd Letter, Ex. 28.)

91.     The Dean notified Plaintiff he would not be re-admitted at that time and urged Plaintiff to schedule an appointment with the psychologist who had conducted the evaluation. (January 6, 1994 Letter, Ex. 27.)

92.     After receipt of this notification, Plaintiff did not at any time file any further complaint or make any further request that the College rescind his expulsion.  (Plaintiff Dep., Ex. 7, at 152, 157.)

**M.     February 10, 2016: Plaintiff's Incident on Aquinas' Campus**

93.     On the evening of February 10, 2016, Plaintiff showed up at Aquinas' campus.  (*Id.* at 190.)  He was 47 years old at the time; more than 25 years had passed since his enrollment as a student.

94.     According to Plaintiff, he had missed a bus he intended to take out of town, did not have money for a hotel, and therefore decided to go to Aquinas' campus "because its somewhere I once felt comfortable, I guess."  (*Id.* at 191.)

95.     Plaintiff explains he was "looking for an empty dorm room or place to sleep for the night."  (*Id.* at 193.)

96.     Once at the campus, Plaintiff engaged in a series of behaviors that were either reported to Aquinas Campus Safety personnel by students and employees of the College, or directly observed by Campus Safety personnel involved; and are summarized in an Aquinas Campus Safety Office report.  (Incident Report Regarding February 10, 2016, Ex. 29.)

97.     Plaintiff has reviewed the Campus Safety report.  (Plaintiff Dep., Ex. 7, at 207.) While he denies he had any ***intent*** to bother, interrupt, unsettle, or make nervous or uncomfortable the students or employees referenced, he does not dispute whether the students and employees felt

that way as a result of his actions, or that the individuals reported the events referenced to Campus Safety personnel.  (*Id.* at 208-210.)

98.     While Plaintiff 's overall memory of the incident is not clear, he recalls and admits at least that he:

<ol type="a" style="list-style-type: lower-alpha;">
<li>Attempted to gain access to the Art and Music Center (*Id.* at 227);</li>
<li>Asked a male student there if the student would allow Plaintiff to store his bags in the student's room and spend the night with him (*Id.*);</li>
<li>Was carrying dildos and bondage paraphernalia in his bags (*Id.* at 228);</li>
<li>May have entered a student dormitory and gone to the common room within the dormitory (*Id.*);</li>
<li>Went to the student library, and was playing loud music on his phone while students were there studying (*Id.* at 192-193);</li>
<li>Interrupted some students in the library while they were studying (*Id.* at 221);</li>
<li>May have had a few conversations with some students in the library which they regarded as inappropriate, including "complimenting one female student on her eyes," and touching the arm of a male student and commenting that he was a "big guy" (*Id.* at 195); and</li>
<li>Asked at least one Campus Safety officer to have sexual relations with him. (*Id.* at 214).</li>
</ol>

**N.      Plaintiff's Arrest and Detention for Trespassing**

99.     At approximately 11:30 p.m., when Plaintiff had still not left the campus as requested, the police were called.  (*Id.* at 193; Incident Report Regarding February 10, 2016, Ex. 29.)

100.    Plaintiff was arrested for trespassing on Aquinas' campus, and was taken to jail. (Plaintiff Dep., Ex. 7, at 194, 233.)

101.    There is no evidence any of the individuals at Aquinas who were involved in reporting or responding to the incident knew Plaintiff or had any information about his background.  (*Id.* at 231-232.)

102.    In connection with this incident, Grand Rapids Police Department personnel advised Aquinas Campus Safety personnel that Plaintiff was known to the Grand Rapids Police Department, was an individual around whom the College should exercise care, was last known to have been in Toronto, and had been the subject of Department efforts to assist authorities in preventing him from being able to return to the country. (Defendant's Responses to Plaintiff's Interrogatories, Ex. 4, at Response 9.)

**O.      February 11, 2016:  Aquinas Issues Plaintiff a No Trespass Order**

103.    On the day following the trespass incident, Aquinas' Campus Safety personnel delivered a "no trespass order" to him at the jail.  (Plaintiff Dep., Ex. 7, at 234.)

104.    The order advised Plaintiff he was not permitted to enter the property of the College and that he would be considered to be trespassing and subject to criminal prosecution if he did so. (February 11, 2016 "Notice of Trespass," Ex. 30.)

105.    The "no trespass" order was justified on several grounds, including that Plaintiff's behavior had been threatening, harassing and/or intimidating, and disruptive to students. (Defendant's Responses to Plaintiff's Interrogatories, Ex. 4, at Response 14.)

**P.      May 2016:  Plaintiff's Conviction for Trespassing at Aquinas**

106.    Plaintiff pled guilty to and was convicted of trespassing at Aquinas' campus in the February incident.  (Plaintiff Dep., Ex. 7, at 249.)

107.    Plaintiff was jailed for a total of 112 days related to this incident.  (*Id.* at 234.)

**Q.      2017-2019:   Plaintiff's Efforts to Have the "No Trespass" Restrictions Lifted, and Present Lawsuit**

108.    Beginning in 2017, Plaintiff made several efforts to have the "no trespass" restrictions lifted.  (Plaintiff Letters Regarding No Trespass Order, Ex. 31.)

109.    Plaintiff's only stated rationale for requesting that the restrictions be lifted was that he did not commit any infraction to justify a "no trespass order." (Plaintiff Dep., Ex. 7, at 248, 251.)

110.    Plaintiff asserted that he had not engaged in any behavior that was harassing, intimidating, or disruptive during the incident in February 2016. (*Id.* at 258; Plaintiff Letters Regarding No Trespass Order, Ex.  31.)

111.    Upon review of Plaintiff's request, there was no suggestion that any change in circumstances had occurred that would warrant lifting of the order.  (Aquinas Response Letters Regarding No Trespass Order, Ex. 32.)[1]

---

[11] In fact, in light of Plaintiff's conviction for trespass, an additional basis for the order existed, namely, Plaintiff's confirmed engagement in criminal activity on the campus. (Defendant's Responses to Plaintiff's Interrogatories, Ex. 4, at Response 14.)

112.     Aquinas declined to modify the "no trespass" restrictions in response to Plaintiff's requests.  (Aquinas Response Letters Regarding No Trespass Order, Ex. 32.)

113.     On December 10, 2019, Plaintiff filed the instant lawsuit against Aquinas. (Complaint, ECF No. 1, PageID.1-13)

**R.     Plaintiff's 1994-Present Criminal History and Obstruction of Discovery Regarding Same**

114.     Just several months after the closure of Plaintiff's OCR charge in 1994, Plaintiff began to be involved a series of serious criminal matters that were reported in local newspapers. (Newspaper Articles, Ex. 33.)

115.     Copies of certain such news reports had been maintained by Aquinas in his student affairs file for consideration in the event Plaintiff sought to continue his efforts to force reinstatement at Aquinas.  *(Id.)*

116.     Plaintiff's reported criminal involvement included:

a.     A 1994 arrest for criminal sexual conduct related to Plaintiff allegedly groping a man at a Target store;

b.     A 1994 arrest for malicious destruction of property related to an incident in which Plaintiff drove a vehicle through the window of a Honda dealership and smashed property with a baseball bat, an offense for which, in 1997, he was found "not guilty by reason of insanity" and institutionalized; and

c.     A1997 indictment for open murder, arising from the death of a fellow mental institution patient of Plaintiff's in Grand Rapids.  (*Id*.)

117.     In the course of Plaintiff's lawsuit, Aquinas issued interrogatories and document production requests regarding Plaintiff's criminal history, to evaluate whether Plaintiff could demonstrate he was "qualified" for enrollment at Aquinas as required to support his claims,

whether any requested modification of policies and procedures to allow Plaintiff to be re-enrolled was reasonable, and whether enrollment of Plaintiff would constitute a direct threat to health and safety.  (Defendant's Brief in Support of Motion to Compel, ECF No. 30, PageID.109-110.)

118.    Plaintiff refused to respond to these, prompting a motion to compel by Aquinas. (*Id.;* Defendant's Motion to Compel, ECF No. 29, PageID.104-105.)

119.    On September 22, 2020, the Court ordered Plaintiff to produce information about his criminal history as Aquinas had requested.  (Order, ECF No. 41, PageID.164-165.)

120.    Plaintiff refused to comply and remains in violation of the Court's order.  (Motion and Brief for Dismissal, ECF Nos. 44 and 45, PageID.170-192; Supplement to Motion, ECF No. 47, PageID.196-201.)

121.    Plaintiff's violation precluded the completion of lay discovery as well as expert discovery regarding whether Plaintiff is a "qualified" individual with a disability as required for his claims; whether modification of regular policies, procedures, and/or decisions would have been "reasonable" as required to support his claims; and whether enrollment of Plaintiff at Aquinas would present a "direct threat" to health and safety.  (*Id.*)

122.    Defendant filed a Motion for Dismissal or Alternative Sanction, including a request for an order that the above matters at issue be considered established in favor of Aquinas for purposes of the litigation.  That motion remains pending as of the date of this filing.  (Motion and Brief for Dismissal, ECF Nos. 44 and 45, PageID.170-192.)

123.    Notwithstanding Plaintiff's refusal to provide discovery, Aquinas has been able independently to identify the following limited evidence of Plaintiff's criminal history:  a 2001 conviction for felony assault of a police officer, for which Plaintiff was sentenced to prison for two years; a 2000 conviction for criminal sexual conduct that originated as an arrest for felony

sexual assault; a 2014 conviction for disturbing the peace in Wayland, Michigan; and the 2016 conviction for trespassing at Aquinas.  (Criminal Record Reports, Ex. 34.)

**S.      Plaintiff's Record of Treatment Noncompliance and Current Status**

124.     Plaintiff has experienced approximately 27 periods of hospitalization related to his bipolar condition since his expulsion.  (Plaintiff's Interrogatory Response No. 12, Ex. 15.)

125.     After each instance of hospitalization, Plaintiff has made the personal decision to discontinue the medication prescribed for him to control his condition.  (Plaintiff Dep., Ex. 7, at 199-200.)

126.     Plaintiff has a history of violent behaviors referenced in his medical records including, as late as 2019 and 2020, making threats against his psychiatrist; engaging in a violent episode in which he overturned furniture and papers in the psychiatrist's office; assaults or attempted assaults on medical personnel and fellow patients; and an assault on a public safety officer.  (Medical Record Excerpts, Ex. 35.)

127.     Plaintiff's treatment providers indicate he remains at "chronic risk of decompensation and subsequent harm to himself or others given his history of non-compliance." (*Id.*)

### III.      STANDARDS FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing the motion record, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (citations omitted).  The moving party "has the initial burden of informing the district

court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Id.* at 558. "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (citation omitted).

## IV.   <u>ARGUMENT</u>

### A.   Arguments Related to All Time Periods

#### 1.   Plaintiff's Claims Are Time-Barred

The statute of limitations for claims under the Michigan Persons with Disabilities Civil Rights Act, as well as for claims brought in Michigan under the Americans with Disabilities Act and/or the Rehabilitation Act is three years.[2] Mich. Comp. Laws Ann. § 600.5805. Claims brought outside the applicable limitations period may not be brought or maintained, and must be dismissed. *Id.*

The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. *Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984). A defendant's refusal later to undo an allegedly discriminatory decision is not a fresh act of

---

[2] While the ADA and the Rehabilitation Act do not set forth specific statutory limitations periods, where a federal statute does not specify a limitations period, the statute of limitations is determined in one of two ways. First, if the claim arises under an Act of Congress enacted after December 1, 1990, it is governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations period. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382; 124 S.Ct. 1836; 158 L.Ed.2d 645 (2004). Otherwise, courts borrow the most analogous state limitations period, so long as the application of state law is not "at odds with the purpose or operation of federal substantive law.*" North Star Steel Co. v. Thomas*, 515 U.S. 29, 34; 115 S.Ct. 1927; 132 L.Ed.2d 27 (1995) (internal quotation marks and citations omitted). The most analogous claim to a claim under the Rehabilitation Act or the Americans with Disabilities Act is either a personal injury claim or a claim for discrimination under the state disability discrimination statute. *McCormick v. Miami University*, 693 F.3d 654, 663-664 (6th Cir. 2012). In Michigan, the statute of limitations for claims for either of those types of claims is three years. See Mich. Comp. Laws Ann. § 600.5805.

discrimination for limitations purposes. *Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547, 552 (7th Cir. 1996).

The *Soignier* case is instructive. In *Soignier,* the plaintiff alleged that the medical board denied him testing accommodations, which caused him to fail his test and be denied certification. The original denial of accommodation happened outside the applicable two-year limitations period applicable in Illinois. Sometime later, and within the two-year limitations period, the plaintiff requested that the board reconsider its decision and allow him to take a new test. The board stood by its original decision and declined his request. The court found that the Board's refusal to change its decision was not a new act of discrimination and the plaintiff's claim was time-barred. *Id.*

In the present case, Plaintiff's claims are all outside the three-year statute of limitations applicable to his claims. With respect to his expulsion and events related to his tenure as a student, those happened 29 or more years before he filed his Complaint. Plaintiff stopped even pursuing a rescission of his expulsion by 1994. With respect to the February 2016 arrest incident and "no trespass" order, the statute of limitations began to run on the February 10, 2016 date of the arrest incident and February 11, 2016 date of the "no trespass" order, respectively. The statute of limitations thus expired in February 2019. Plaintiff did not file suit until December 2019. The College's subsequent refusals to lift the "no trespass" order restrictions when Plaintiff requested did not extend the statute of limitations for his claims. *Soignier, supra.*

### 2. Plaintiff Cannot Establish the Elements of His Claims Under the Statutes

To establish a claim of discriminatory exclusion from an institution in violation of the Rehabilitation Act or the Americans with Disabilities Act, the plaintiff must show that: (1) the plaintiff is disabled as defined in each statute; (2) the plaintiff is "otherwise qualified" to continue in the program; and (3) he was dismissed or excluded from the program on the basis of the

disability.  *See, Kaltenberger v. Ohio College of Podiatric Medicine*, 162 F.3d 432, 435 (6th Cir. 1998) (applying Title III of ADA and Rehabilitation Act).  The burden of showing that the defendant constitutes program receiving federal financial assistance, that the plaintiff is individual with disability, and that the plaintiff is otherwise qualified rests with the plaintiff.  *Id.*

Similarly, in order to make out a *prima facie* case of disability discrimination by an educational institution under the MPWDCRA, a plaintiff must show (1) that he is a "disabled person" under the Act; (2) that he is qualified for the educational opportunity sought in spite of his disability; and (3) that, in spite of the above qualifications, he is not being afforded an equal opportunity to secure the educational opportunity as other applicants. *Crancer v. Board of Regents of the University of Michigan,* 156 Mich. App. 790, 794 (Mich. App. 1986).

### a.     Plaintiff is Not a "Qualified Individual"

A handicapped or disabled person is "otherwise qualified" to participate in a program if he or she can meet the program's requirements with or without reasonable accommodation. *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.,* 64 F.3d 1026, 1034 (6th Cir. 1995) (citing *Doherty v. Southern College of Optometry,* 862 F.2d 570, 574-575 (6th Cir. 1988)).  In any claim brought based on the refusal of a higher education institution to alter its policy of admissions or academic matters, courts are to give judicial deference to the educational institution's determination, absent proof that its standards serve little purpose than to deny an education to handicapped persons. *Crancer,* 156 Mich. App. at 794 (deference as to admission requirements); *Mershon v. St. Louis University,* 442 F.3d 1069, 1077 (8th Cir. 2006) (deference as to academic decisions).

In the present case, Aquinas maintains conduct, academic, and attendance requirements for enrollment.  Despite several accommodations and efforts by Aquinas to assist Plaintiff during his tenure, he was not able to meet such requirements, and was not a "qualified" individual at the time

of his last enrollment.  Plaintiff could not maintain appropriate and safe conduct, or a stable pattern of attendance at the school, and would not comply with efforts by the College or his health providers to assist with this.

As to the events for the period from 2016 forward, Plaintiff has not even applied for admission to Aquinas and thus has not established an injury for purposes of a claim of an alleged denial of enrollment.  Even if he had done so, Aquinas' routine practice is to evaluate the conduct and criminal history of all applicants in determining their qualification to be admitted to the College, which is a part of the College's efforts to ensure a safe and sustainable academic environment for students. Plaintiff has denied discovery regarding the full extent of his criminal history, and, for the reasons set forth in Aquinas' Motion for Dismissal or Alternative Sanction Due to Plaintiff's Violation of the Court's Discovery Order, should be precluded from claiming he is "qualified."  Notwithstanding this, based on even the limited evidence Aquinas has been able to identify, Plaintiff could not present a genuine issue of fact to satisfy his requirement of showing he is "otherwise qualified" for admission in light of his serious and ongoing pattern of criminal activity.[3]  Plaintiff's record contains several serious offenses and a lack of evidence of rehabilitation.

> **b.**    **Aquinas Provided Equal Access and Satisfied Any Duty of Reasonable Modification**

Summary judgment is appropriate where the record reveals without a genuine issue of fact that an educational institution provided, or made reasonable modifications to provide, the student an opportunity for equal access to the institution's programs. *See, e.g., Jakubowski v. Christ*

---

[3] Aquinas reserves the right to present further evidence and argument regarding Plaintiff's qualified status if Plaintiff is permitted further opportunity to comply with the Court's discovery order.

*Hospital, Inc.,* 627 F.3d 195 (6th Cir. 2010) (affirming dismissal of plaintiff's claims based on finding there was no genuine issue of material fact as to whether the hospital employer met its duty of reasonable accommodation).

In the instant case, the record reveals no indication that Aquinas denied Plaintiff or denies individuals generally equal access to its programming.  There is no evidence of any different policy being applied against persons with disabilities as opposed to others that would support Plaintiff's claim.

The undisputed facts further reveal that, during Plaintiff's tenure as a student, Aquinas made several modifications for him in an effort to ensure equal access notwithstanding his disability.  Such measures included allowing him multiple extended absences from school, allowing him extra time to complete coursework, granting him the ability to withdraw from classes outside established time frames, reinstating him following suspension, attempting to work with Plaintiff and his treatment providers to ensure Plaintiff could maintain a stable health condition and be able to succeed at the College, and minimizing his fees when he was unable to so. On this basis also, Plaintiff's claims should be dismissed.

> **c.    Aquinas' Actions Toward Plaintiff Were Not "Because of" or "Solely by reason of" Disability**

Under the Rehabilitation Act, a plaintiff must establish that the alleged discriminatory conduct was undertaken "***solely because of the plaintiff's disability***" in order to make out a claim. *Doherty,* 862 F.2d at 573 (emphasis added).  Under the ADA, the plaintiff must establish that the plaintiff's disability was a ***motivating factor*** in the alleged discriminatory actions.  *Lewis v. Humboldt Acquisition Corp., Inc.*,   681 F.3d 312 (6th Cir. 2012) (distinguishing the ADA's "motivating factor" test from the "sole factor" test applicable under the Rehabilitation Act).  The Michigan Persons with Disabilities Civil Rights Act prohibits educational institutions from

denying access to individuals or expelling, excluding, or otherwise discriminating against students *because of* a disability that is unrelated to the individual's ability to utilize the institution, or because of the use by an individual of adaptive devices or aids.   MCLA § 37.1402.   The MPWDCRA is substantially similar to the federal Americans with Disabilities Act, and courts take the same general approach to considering claims under each law. *Peden v. City of Detroit,* 470 Mich. 195; 680 N.W.2d 857 (Mich. 2004).

There is an important distinction between discharging someone for unacceptable misconduct and discharging someone "because of" his or her disability.   *Maddox v. Univ. of Tennessee,* 62 F.3d 843, 847 (6th Cir. 1995) (abrogated on other grounds) (finding that employee was not discharged "solely because of disability" when he was terminated because of an off-duty arrest for DUI, his conduct during the arrest, and the negative publicity that resulted to the University); *see also, Stanciel v. Donahoe,* 570 Fed. Appx. 578 (6th Cir. 2014) (unpublished opinion, Ex. 36) (employee's termination for absenteeism, even if causally related to disability, was not a termination solely because of disability).   The Sixth Circuit recognizes that entities covered by disability discrimination statutes "must be permitted to take appropriate action with respect to an [individual] on account of egregious or criminal conduct, regardless of whether the [individual] is disabled."   *Maddox,* 62 F.3d at 845, 848 (analyzing Rehabilitation Act and ADA claims in employment context).   Michigan courts have found similarly under the MPWDCRA. *See, Collins v. Blue Cross Blue Shield of Michigan,* 228 Mich. App. 560, 568 (1998) (upholding as  matter of law the decision of plaintiff's employer to terminate plaintiff, who had a psychiatric disability, on the basis of plaintiff's statements about killing supervisor).

In the present case, the undisputed facts establish that Aquinas' actions toward Plaintiff were based on his conduct, rather than being motivated by his status as having a disability.  Indeed,

with respect to the events related to his tenure as a student, Aquinas personnel had knowledge of his medical condition, and made several efforts to work with him to allow his continued attendance at the College.  The College only initiated any corrective or adverse action as Plaintiff's conduct continued to disrupt the College environment and his own performance as a student.  With respect to the 2016 event, Aquinas took no action but to respond to Plaintiff's disruptive and harassing conduct on the College's campus.  Plaintiff has no evidence that any of the personnel involved in reporting or responding to the incident even had any awareness that Plaintiff had a disability, much less that such disability, rather than his conduct, motivated the College's response to the situation.

### 3.       Plaintiff's Claims are Barred by the Direct Threat Defense

If a plaintiff can establish the elements of a claim of disability discrimination, a public accommodation must make the plaintiff's requested modification unless it proves either that doing so would pose a direct threat to the health or safety of others.  *Bragdon v. Abbott,* 524 U.S. 624, 648-49; 118 S.Ct. 2196; 141 L.Ed.2d 540 (1998). Claims under the Rehabilitation Act and the Americans with Disabilities Act are construed similarly with respect to this defense.   *Doe v. Woodford County Bd. of Educ.,* 213 F.3d 921, 925 (6th Cir. 2000), *citing,* 42 U.S.C. § 12182(b)(3). Under Michigan's PWDCRA, the direct threat concept applies, but appears within the "qualifications" stage of the analysis. *Collins,* 228 Mich. App. at 570-571.  The "qualification standards" an employee must meet with or without reasonable accommodation include "a requirement that an individual shall not pose a direct threat to the health and safety of other individuals in the workplace." *Id.*  While the existence of a "direct threat" is often an issue for the jury, summary judgment is nonetheless appropriate based on this defense where there is no genuine issue of material fact.  *See, Wurzel v. Whirlpool Corp.,* 482 Fed. Appx. 1 (6th Cir. 2012)

(unpublished opinion, Ex. 36) (affirming district court's dismissal of plaintiff's ADA claim on the basis of direct threat defense).

A "direct threat" is "a significant risk to the health and safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services." *Doe v. Woodford County Bd. of Educ.,* 213 F.3d at 925.  An entity cannot rely on stereotypes or generalizations about the effects of a disability to determine if a disability poses a threat, but rather must make individual assessments based on reasonable judgment relying on current medical knowledge or objective evidence. *Id.*

In the present case, Plaintiff has prevented discovery relevant to the applicability of the "direct threat" defense, as outlined in Aquinas' pending Motion for Dismissal or Other Sanction. The Court should consider the "direct threat" defense established in favor of Aquinas based on Plaintiff's violation of the Court's discovery order.  Notwithstanding this, even based on the limited evidence Aquinas has been able to discover despite Plaintiff's obstruction, the uncontroverted evidence indicates the "direct threat" defense is applicable and bars Plaintiff's claims.  During Plaintiff's tenure as a student and his efforts to be reinstated, the College made the assessment that he posed a risk of serious harm based on the objective evidence of Plaintiff's behavior.  This assessment was further supported by the input of a medical professional engaged to evaluate Plaintiff individually.  As to more recent time periods, Plaintiff has a substantial, serious, and repeating occurrence of criminal offenses.  He also has a history of violent behaviors referenced in his medical records including, as late as 2019, threatening his psychiatrist, engaging in a violent episode in which he overturned furniture and papers in the psychiatrist's office, assaults or attempted assaults on medical personnel and fellow patients, and an assault on a public safety officer.  According to Plaintiff's own treatment providers as of 2020, Plaintiff remains at "chronic

risk of decompensation and subsequent harm to himself or others due to his history of noncompliance" with his medical treatment. It is unknown what a full disclosure of Plaintiff's criminal history would add to this list, but this information alone demonstrates that the defense applies to bar Plaintiff's claims.[4]

**B.      Arguments Related to 1988-1990 Events**

**1.      Plaintiff's Claims are Barred by a Prior Settlement of his OCR Charge**

A party that enters an agreement to resolve a dispute waives and releases the right to bring further legal action regarding that dispute. *Reicher v. SET Enterprises,* 283 Mich. App. 657, 664 (2009).  "An agreement to settle a dispute is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *See, Walbridge Aldinger Corp. v. Walcon Corp*., 207 Mich. App. 566, 571 (1994).  Courts are to enforce contracts, and honor the parties' intent, either expressed through unambiguous terms or by extrinsic evidence, *See, Reicher, supra,* at 657; *see also, Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist*., 452 Mich. 309, 323; 550 N.W.2d 228, 237 (1996). Only if the court determines that the contract is ambiguous does the question of the intent of the parties become a question of fact, subject to proof by extrinsic evidence and resolution by the trier of fact. *See, UAW-GM Human Resources Ctr. v. KSL Recreation Corp.*, 228 Mich. App. 486, 491-92; 579 N.W.2d 411, 414 (1998).

In the present case, Plaintiff filed a Charge with the Office of Civil Rights regarding his expulsion at some point prior to 1993 and entered a written agreement with Aquinas to resolve the dispute in August 1993.  (Plaintiff Dep., Ex. 7, at 149-152; August 26, 1993 Letter Resolution Agreement, Ex. 26.)  Plaintiff understood he was entering into the agreement to resolve the dispute

---

[4]Aquinas reserves the right to present further evidence and argument regarding the "direct threat" defense if Plaintiff is permitted further opportunity to comply with the Court's discovery order.

he had filed regarding his expulsion.  (Plaintiff Dep., Ex. 7, at 149.)  Plaintiff's lawsuit now seeks to contest the very decision he raised and settled in his OCR Charge.  Plaintiff's claims related to his tenure as a student and his expulsion are barred and must be dismissed.

### 2.   Plaintiff's ADA Claims Related to his Expulsion are Barred because they Pre-Date the Statute

The ADA was signed into law July 26, 1990, but its provisions under Title III did not take effect until 18 months later, on January 26, 1992.  I. PL 101–336, July 26, 1990, 104 Stat 327; *see also, Boyle v. Brown Univ.,* 881 F. Supp. 747, 751 (D. Rhode Island 1995).  The ADA is not retroactive, meaning it does not apply to claims that arose prior to the effective date.  *Id.* Similar to situations involving a statute of limitations, in the context of claims under the ADA, stemming from conduct which occurred prior to the Act's effective date, "[a] plaintiff cannot use the continuing violation theory to resurrect  claims about discrimination ... concluded in the past, even though its effects still persist."  *Id.* at 752, *citing McGregor v. Louisiana State*, 3 F.3d 850, 867 (5th Cir. 1995).

In the present case, Plaintiff's tenure as a student ended, and his expulsion occurred, on September 26, 1990.  The effects of that expulsion, and the College's refusal to rescind it, do not constitute new acts of discrimination that would create a cause of action after the effective date of the statute.  Plaintiff's claims thus pre-date the effective date of the statute and must be dismissed. *Id.*

### C.   Arguments Related Only to 2016 Incident

### 1.   Plaintiff Made No Request for Modification Due to Disability

A college is not obligated to provide a reasonable modification based on disability until the individual in need of such accommodation provides a proper diagnosis and requests a specific accommodation.  *Kaltenberger,* 162 F.3d at 437.  In the present case, in addition to all of the

generally applicable grounds for dismissal outlined above, Plaintiff did not make any request for modification based on disability.  It is clear Plaintiff did not disclose a disability during the February 10, 2016 incident.  Further, while it would have been untimely regardless, Plaintiff did not premise his request that the "no trespass" order be lifted on disability considerations or a need for modification of College policies due to a disability.  Rather, Plaintiff's sole articulated basis for requesting the "no trespass" order be lifted was ***his opinion that he did not engage in the conduct attributed to him.***  Plaintiff's failure to make a proper request for modification under the statutes at issue is an additional reason his claims must be dismissed.

## V.    CONCLUSION

Based on the foregoing, there is no material issue of fact that could support a judgment in Plaintiff's favor on his claims.  Plaintiff's complaint should be dismissed in its entirety.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendant

Dated:  November 19, 2020          By:     */s/ Stephanie R. Setterington*
                                          Stephanie R. Setterington (P58177)
                                          Bridgewater Place, P.O. Box 352
                                          Grand Rapids, Michigan 49501-0352
                                          (616) 336-6466
                                          srsetterington@varnumlaw.com

31

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.2(b)(i)</u>

Using Microsoft Word 10, the word count for the preceding document, excluding caption, tables, and signature block, is 8,791words.

Respectfully submitted,

VARNUM LLP
Attorneys for Defendant

Dated:  November 19, 2020          By:     */s/ Stephanie R. Setterington*
Stephanie R. Setterington (P58177)
Bridgewater Place, P.O. Box 352
Grand Rapids, Michigan 49501-0352
(616) 336-6466
srsetterington@varnumlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of November, 2020, a copy of the foregoing was served by e-mail and regular United States mail, postage prepaid, upon the following party:

> Joseph Bruneau, Plaintiff pro se
> 5020 Carson Ave., S.W.
> Grand Rapids, MI  49548
> joe_bruneau@yahoo.com

*/s/ Stephanie R. Setterington*
Stephanie R. Setterington (P58177)

17178152.2