# EXHIBIT 35

| St Joseph's Health Centre<br>**Documents Review Report**<br>***ELECTRONIC COPY*** | **ST. JOSEPH'S**<br>HEALTH CENTRE  TORONTO<br>30 The Queensway, Toronto, ON, M6R 1B5<br>www.stjoe.on.ca  416-530-6000 |
|---|---|

| **BRUNEAU, JOSEPH ROBERT** | DSC | Age: 51y | M | DOB: |
|---|---|---|---|---|
| | | Patient MRN: J10414839 | | |

**24-Jan-2020 08:57**   Discharge Summary

```
ST. JOSEPH'S HEALTH CENTRE
TORONTO, CANADA


DISCHARGE SUMMARY
ADMITTED:        January 09, 2020       DISCHARGED:   January 23, 2020
C# 10414839                V# IF000831/19
NAME: BRUNEAU, JOSEPH
DOB:                       SEX:M        HCN: 2605149448-EV

THIS DOCUMENT HAS BEEN "ELECTRONICALLY AUTHENTICATED" AS DEFINED IN
ST. JOSEPH'S HEALTH CENTRE MEDICAL STAFF RULES & REGULATIONS,
APPENDIX J.

CC:      CAROL MARY EILEEN HUGHES, MD 52678
MARK FILIPCZUK, MD, FRCP(C)
```

Mr. Joseph Bruneau was admitted to inpatient psychiatry from January 9 to January 23, 2020.

Mr. Bruneau is a 50-year-old man who is living in an apartment here in Toronto. He is a dual citizen of Canada and the United States and splits his time between those two countries. He is supported on social assistance from the United States and he also works at times as a background actor on television productions in the city. He is currently single with no children.

Mr. Bruneau is well known to our service from previous admissions. He had also been followed previously as an outpatient by Dr. Filipczuk. He has a longstanding history of bipolar disorder type 1 and there is a significant history of aggression and forensic involvement during periods when he becomes manic and unwell. In between episodes of illness he also tends to be poorly compliant with medications, which has of course contributed to his challenging course of illness. He has an extensive forensic history and has had a number of charges in the United States. He is a registered sex offender there according to collateral. Dr. Filipczuk has questioned antisocial personality traits or traits of psychopathy, as the patient often has very little remorse for his actions after the fact.

He had most recently been admitted to our centre in March of 2019 under Dr. Moore and I would refer to her discharge summary for further details. Prior to that, he had been followed by Dr. Filipczuk, but there had been an incident where he had been looking for Dr. Filipczuk and making threats against him and he had also caused some damage in the reception area of our outpatient service knocking over chairs and pushing papers off desks. This was quite stressing to the staff down there, although, fortunately, no one was harmed. Following that admission, it was decided that it was not advisable for Dr. Filipczuk to follow this patient and he was discharged without psychiatric care.

Since that admission as far as I can tell, the patient has not been

|  | St Joseph's Health Centre<br>**Documents Review Report**<br>\*\*\*ELECTRONIC COPY\*\*\* | ST. JOSEPH'S<br>HEALTH CENTRE   TORONTO<br>30 The Queensway, Toronto, ON, M6R 1B5<br>www.stjoe.on.ca  416-530-6000 |
|---|---|---|
| **BRUNEAU, JOSEPH ROBERT** | DSC    Age: 51y    M<br>Patient MRN: J10414839 | DOB: |

| 24-Jan-2020 08:57 | Discharge Summary |
|---|---|

compliant with any psychiatric medication.

I am not aware of any significant medical issues. There are reported allergies to haloperidol and penicillin. As far as I am aware alcohol and drug uses have not been significant contributors to his course of illness and the patient reports he is abstinent from substances.

The patient was brought to hospital by his ex-girlfriend who had been concerned about his emerging manic symptoms. According to the patient, he had had a number of altercations in the days and weeks prior to coming to hospital. He reported an incident where he had gotten into a fight with a special constable when he was just trying to avoid paying a fare on the TTC. The patient reported he had head-butted the constable and he faced a charge for assaulting this officer. He also reported that he gotten into an altercation with someone after he confronted them about bringing their bike on the TTC. He also said that a security guard had fought with him and stabbed him at one point in time, although he was unclear about the timeline and details of this. When he came to the emergency, he presented as quite manic and grandiose. He attempted to physically assault security officers at triage and attempted to assault another co-patient. He required emergency chemical restraints and was admitted to inpatient psychiatry on a Form 1.

COURSE IN HOSPITAL: He spent a number of days down in our ____ 7:13 area awaiting a bed on our PICU. During that time, he was placed onto a Form 3 and he was also found incapable with regards to treatment decisions, as he had no initial insight into his episode of illness. He was initially placed onto olanzapine 10 mg, which was the medication he had taken in the past during episodes of illness. He was reluctantly compliant with this. I contacted his mother in Michigan who was not willing to act as SDM and we were not able to locate any family members who were willing to act in this role. Chris Caines from the Public Guardian and Trustee agreed to act as SDM. She gave consent to initiate Invega Sustenna as well as for PRNs of both loxapine and Ativan either p.o. or IM if needed.

The patient received the first loading dose of Invega Sustenna 150 mg IM on January 15 after he had come up to our PICU. Unfortunately, within a few days, he seemed to develop a marked tremor, which was more pronounced in his right hand and involved a sort of flapping motion. There was no intention tremor and it was assessed by myself and by Dr. Stall and there was some question of whether he might be exaggerating this symptom. We did observe him quite a bit on camera over a few days and this tremor did seem to persist. Overall, I did think that this did represent EPS and we elected not to proceed with the second dose of Invega Sustenna. By this point in time, the patient was improving. He did have some insight into the fact that he had been experiencing a manic episode and that this had caused him to get himself into a lot of trouble in the community. He was quite concerned about antipsychotic medications given the risk of EPS and tardive dyskinesia and he did have a reasonably good awareness of the risks of these symptoms with that medication class. He was agreeable by this point in time to go on to Epival, which is a medication he had taken to reasonably good effect in the past. He was started on 750 mg

|  | St Joseph's Health Centre<br>**Documents Review Report**<br>***ELECTRONIC COPY*** | ST. JOSEPH'S<br>HEALTH CENTRE   TORONTO<br>30 The Queensway, Toronto, ON, M6R 1B5<br>www.stjoe.on.ca 416-530-6000 |   |
|---|---|---|---|
| **BRUNEAU, JOSEPH ROBERT** | DSC | Age: 51y   M<br>Patient MRN: J10414839 | DOB: |
| 24-Jan-2020 08:57 | Discharge Summary | | |

of the medication at bedtime and at this point in time I found him to be capable in regards to his treatment decisions.

With the Epival, he continued to gradually improve. Throughout much of the admission sleep remained very problematic but towards the end of the admission he did begin to experience a few better night's sleep. There were no further incidents of aggression towards anyone. He did continue to experience some delusional beliefs in particular about an idea that he had ovaries inside his body rather than testicles. He reported that he had for a long time felt that he was a female and that he wondered about being transgender and talked about crossdressing at times.

Towards the end of the admission, he was also moved out to our main unit on 7M and there was no management issue or further aggression with this either. On January 23, his Form 3 expired and at this point in time he was felt to no longer be certifiable, as there was no longer any imminent risk of harm to himself or others and his manic symptoms were clearly improving. By this point in time, he was also capable around his treatment decisions and box B criteria were not applicable.

I had a number of discussions with Dr. Filipczuk about followup for this patient. Dr. Filipczuk was willing to follow him despite the threats that the patient had made in the past. They did have for many years a good therapeutic relationship and Dr. Filipczuk was an important factor in giving some additional stability to this patient in recent years. We worked to try and arrange a safety plan that could accommodate this including the idea of having security officers present when the patient came to the outpatient clinic at least for his first few visits. We were unable to agree on a final version of this plan by the time of discharge; however, the patient was probably agreeable to comply with a plan was proposed and consented to us contacting him by phone to set up a followup with Dr. Filipczuk, if at all possible. Failing this, he was agreeable to follow up with his family doctor.

His stated plans after discharge were to attend court dates in early February. He was hoping to go visit the states for a few weeks to see family members.

Throughout the admission, he denied suicidal ideation, plan or intent. He consistently denied any homicidal ideation, plan or intent. By the end of the admission, his manic symptoms had settled significantly and he was sleeping better and there was certainly no indication of any aggression or acute risk. Also of note, this patient does not have a license here in Ontario and does not drive a car.

On mental status exam, on the day of discharge, Mr. Bruneau was a 50-year-old man who was cooperative with the assessment. He was calm and polite and made good eye contact. Speech was of normal rate, rhythm and volume. Affect was fairly bright and reactive. He has superficial charm. He described his mood as good. Thought form was

|  | St Joseph's Health Centre<br>**Documents Review Report**<br>***ELECTRONIC COPY*** | ST. JOSEPH'S<br>HEALTH CENTRE   TORONTO<br>30 The Queensway, Toronto, ON, M6R 1B5<br>www.stjoe.on.ca  416-530-6000 |
|---|---|---|
| **BRUNEAU, JOSEPH ROBERT** | DSC   Age: 51y   M<br>Patient MRN: J10414839 | DOB: |

| 24-Jan-2020 08:57 | Discharge Summary |

linear and coherent. Thought content did not include any suicidal or homicidal ideation and he consistently denied these throughout the admission. There was no paranoia. He did continue to have some bizarre somatic delusions about having ovaries; however, he was less fixated on these. He denied perceptual abnormalities. Insight was fair and judgment was also fair at the time of discharge.

At the time of discharge he also expressed a willingness to remain on Epival at least for a period of a few more weeks and possibly longer. He did find that he was tolerating the medication well and he preferred the idea of being on a mood stabilizer without the risk of tardive dyskinesia.

IMPRESSION: Mr. Bruneau is a 50-year-old man with a longstanding history of bipolar 1 disorder. He has been poorly compliant with medications in between episodes of illness and hospitalizations and, unfortunately, this has resulted in a very prolonged and severe course of illness for him. He has had many hospitalizations and many brushes with the law and a lot of forensic involvement. It does not appear that substances have been a significant contributor to his course of illness. The patient does have antisocial personality traits, which I think also contribute to his periods of aggression and make it difficult for him to appreciate the consequences of his actions or their effects on others.

He did improve in hospital with reinitiation of antipsychotic medications as is often the case. His insight also improved and he does recognize the presence of bipolar disorder and that he was experiencing a manic episode prior to coming to hospital. As is often the case he became capable during this admission and was capable at the time of discharge. Unfortunately, this often resulted in him making the capable decision to stop medications after discharge despite the significant risks involved. However, at the time of his discharge, he was expressing a willingness to stay on Epival and follow up with psychiatric services if possible.

This patient remains at chronic risk of decompensation and subsequent risk of harm to himself or others given his history of noncompliance.

DISCHARGE MEDICATIONS:   Epival 750 mg p.o. at bedtime.

DISCHARGE PLAN:
1. The patient was discharged on January 23, as he was no longer certifiable after the expiring of his Form 3. He was not willing to stay in hospital as a voluntary patient at this time.
2. He was expressing a willingness to stay on Epival. He was given a prescription for one month of the medication with one repeat. An Epival level was done on the day of discharge and was in the therapeutic range at 495.
3. We are attempting to coordinate a safety plan to see if it might be possible for him to follow up again with Dr. Filipczuk. This might involve the presence of security when he comes to visit the outpatient service on the fifth floor. I have left this coordination of this

|  | St Joseph's Health Centre<br>**Documents Review Report**<br>***ELECTRONIC COPY*** | ST. JOSEPH'S<br>HEALTH CENTRE   TORONTO<br>30 The Queensway, Toronto, ON, M6R 1B5<br>www.stjoe.on.ca 416-530-6000 |
|---|---|---|
| **BRUNEAU, JOSEPH ROBERT** | DSC    Age: 51y    M<br>Patient MRN: J10414839 | DOB: |

| 24-Jan-2020 08:57 | Discharge Summary |
|---|---|

plan in the hands of Gwen Yorston, the patient care coordinator for our outpatient service. The patient has consented first us to contact him by phone with an appointment date and conditions of a safety plan if we are able to set this up. Failing this, he will continue to follow up with his family doctor.
4. This is an informed discharge. The patient is aware he should continue on his medication not stop or change it unless working with a physician. We discussed the risks to himself and others if he again becomes noncompliant and becomes ill again with a manic episode. He should follow up with all medical appointments. He should continue to avoid alcohol and street drugs. He knows that if his condition worsens, he can return to any emergency room or call 911.
5. The patient also has court dates pending for his recent charges. He is aware of these court dates. He is also aware of the process of mental health court diversion and he is hopeful he might seek to have this. I informed him that the court as a condition may require him to continue on medications and seek psychiatric followup.

ADAM TOEWS, MD, FRCP(C)
STAFF - DEPARTMENT OF PSYCHIATRY

REF:  670040
TR:   CN
DD:   01/24/2020 08:57:13 am   DT: 01/24/2020 12:13:28 pm



**fred victor**
Helping people find place & purpose

210 Dundas St. West, 4th floor, Toronto, Ontario M5G 2E8
Tel: 416-482-4103   Fax: 416-482-5237

**Mental Health Court Support Services**
**College Park Court**
**444 Yonge Street, Room 263 & 265**
**Toronto, On M5B 2H7**
**Fax # 416-598-3495**

J10414839
RC003548/11

Feb 03, 2020

RE: Bruneau, Joseph      DOB:

Dear Dr. Filipczuk,

Bruneau, Joseph is being considered as a potential candidate for the Fred Victor Mental Health Court Diversion Program at College Park Court. This program was created to assist and divert individuals with mental health problems who have been charged with low-risk offences from the legal system. Our program is voluntary and the Crown Attorney ultimately makes the final decision on whether an individual receives diversion.

This individual has been charged with 1) Assault x1 and 2) Uttering Threat x1 and will return to court on Mar 02, 2020 at College Park Court.

In order to review this matter, it would be helpful to have you compile a brief history including:

- Mental Health Diagnosis
- Treatment recommendations
- Medications
- Frequency of appointments
- Opinion regarding the relationship between the offence and the identified illness

Consent to Release Information has been included for your files.

Please address any letter you may provide to myself and fax a copy to 416-598-3495. Unfortunately our program is not able to pay for the cost associated with the provision of a letter to support our client's court matters. Your support is greatly appreciated.

Thank you for your time and attention to this request. If you have any questions or concerns, I may be contacted at (416) 482-4103 X 379.

Sincerely,

Mohammad Rafi
Mental Heath Court Support Worker

Charitable Registration #118931377RR   www.fredvictor.org