UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BRUNEAU,

        Plaintiff,                    Case No. 1:19-cv-1037

v.                                        Hon. Paul L. Maloney

AQUINAS COLLEGE,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Joseph Bruneau ("Bruneau") filed this lawsuit against defendant Aquinas College (sometimes referred to as "Aquinas" or the "college"), alleging violations of federal and state disability statutes. This matter is now before the Court on Aquinas' motion for summary judgment (ECF No. 49).[1]

### I.    Background

Bruneau alleged that Aquinas expelled him in 1990 and that he is currently barred from visiting the college campus. Compl. (ECF No. 1, PageID.3-4). Bruneau alleged that Aquinas discriminated against him because he has mental disabilities. *Id*. Later, "when he visited the campus in 2016," Aquinas charged him with trespassing. *Id.* at PageID.4. Bruneau's complaint includes three counts. In his first cause of action, Bruneau alleged that Aquinas violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, "by denying Plaintiff, on the basis of disability, the opportunity to fully and equally enjoy, participate in, and benefit from Aquinas College's goods, services, facilities, privileges, advantages and accommodations." *Id*. at

---

[1] This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Non-document order (April 9, 2021).

1

PageID.6. In his second cause of action, Bruneau alleged that Aquinas violated Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, "by denying Plaintiff the benefits of its programs [sic] services and activities on the basis of disability." *Id*. at PageID.9. In his third cause of action, Bruneau alleged that Aquinas violated the Michigan Persons With Disabilities Civil Rights Act ("PWDCRA"), M.C.L. § 37.1101 *et seq*., because it "denied Plaintiff full and equal access to the benefits of Aquinas College's programs and activities, on the basis of disability." *Id*. at PageID.10. Bruneau's requested relief includes an injunction ordering Aquinas to reinstate him "as an individual able to enroll as a student at the college," an order enjoining Aquinas from violating the three statutes, attorney's fees, and costs. *Id*. at PageID.12.

## II. Defendant's motion for summary judgment

### A. Legal standard

Defendant Aquinas has moved for summary judgment on all of Bruneau's claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

2

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Factual record

After a number of psychotic episodes while enrolled as a student at Aquinas, and his failure or refusal to comply with treatment plans, the college expelled Bruneau on September 26, 1990.  The letter of expulsion from the Dean for Student Development stated in pertinent part,

> Dear Joe,
>
> I have been informed by numerous individuals on campus of behavior which has been judged inappropriate. You have been observed engaged in a variety of bizarre behaviors in the Wege parking lot, the Hruby creek, Albertus Hall, the LRC, and the Aquinas soccer field. During the incident today in the LRC and the soccer field, you have been reported carrying a fencing foil, a potential weapon.
>
> As a result of these behaviors, I am forced to invoke my authority as chief student affairs officer, and summarily expel you, effective immediately, from Aquinas College.
>
> <u>Expulsion is permanent and under no circumstances will you be readmitted</u>.
>
> This is the third occassion [sic] where the College has attempted to assist you through special arrangements to return to the classroom after brief hospitalizations. You have returned on each occassion [sic] indicating that you are able to return and that with your medication, no further problems will develop. This set of incidents, one week after returning from the last set of incidents, leads me to conclude that you have ceased your medication, violating the terms of your recent readmittance.  The College has done all that it possibly can to assist you.

3

> I sincerely hope that you take the time to get the treatment you need. You have the right to appeal this decision to President Paul Nelson within seven days or the right of appeal is no longer available.

Expulsion Letter (ECF No. 50-25, PageID.415) (emphasis in original).

After his expulsion, Bruneau was hospitalized for around three months. Joseph Bruneau Deposition (ECF No. 50-8, PageID.346).[2] At some point, Bruneau made an unsuccessful attempt to have Aquinas rescind the decision. *Id*.

Sometime prior to 1993, Bruneau filed a charge with the United States Department of Education, Office of Civil Rights, regarding his expulsion and seeking rescission of the expulsion. *Id*. at PageID.347. In August 1993, Bruneau resolved the charge through a voluntary settlement agreement with Aquinas. *Id*. The agreement provided in part,

> 1. That you [Bruneau] agree to release information regarding your treatment at Transitions to Dr. Richard Raubolt, Aquinas College's consulting psychologist. This release of information includes any conversation or exchange of documents between Dr. Raubolt and Dr. Eerdmans that are necessary for Dr. Raubolt to understand your case and prognosis. This letter, when signed by you, will function as the authorization required by Dr. Raubolt to consult with and receive information from Transitions and Dr. Eerdman.
>
> 2. You agree to meet with Dr. Raubolt if Dr. Raubolt determines that meeting with you is necessary.
>
> 3. That you agree to let Dr. Raubolt discuss his findings with Paul Nelson, Aquinas College President.
>
> 4. And finally, you agree not to visit the Aquinas College campus until Dr. Raubolt has had an opportunity to discuss your situation with Paul Nelson.

Letter (Aug. 26, 1993) (ECF No. 50-27, PageID.419). Bruneau accepted this resolution of his charges. Bruneau Dep. at PageID.348.

---

[2] The Court notes that many of the facts recited in this report are taken from Bruneau's deposition testimony.

4

Ultimately, a psychologist (Dr. Boyd) issued a written opinion to Aquinas' President that Bruneau's conditions, including "eruptive hostility" and "organized social fear" presented a safety concern to other students:

> Thank you for your inquiry requesting additional information regarding Joe Bruneau. As you know, I see Joe as primarily a bipolar affective disorder but additionally he had concomitant features of paranoid schizophrenia. With this combination of mental illness, one cannot be assured of the safety of other students. The combination of eruptive hostility, organized social fear, and manic induction indeed creates unpredictable behavior and therefore I cannot give assurances regarding other students safety. The best assurance, obviously, is for Joe to prevent reoccurring episodes. That is, precisely what my evaluation would attempt to secure so that Joe could eventually return to school at no threat to himself or others.

Letter (Jan. 7, 1994) (ECF No. 50-29, PageID.423).

Aquinas' President advised Bruneau that,

> As I indicated to you on the phone yesterday, based upon the recommendation of Dr. Don Boyd, Licensed Psychologist, I have decided not to readmit you to Aquinas College at this time.
>
> I urge you to schedule an appointment with Dr. Boyd at your convenience to discuss his recommendations and findings. I believe such an appointment would be most beneficial to you.

Letter (Jan. 6, 1994) (ECF No. 50-28).  After receiving this notification, Bruneau did not file any complaints or make any requests that Aquinas rescind his expulsion.  Bruneau Dep. at PageID.348-349.

Over 20 years later, on the evening of February 10, 2016, Bruneau showed up at Aquinas' campus.  *Id.* at PageID.350.  Bruneau testified that he had missed a bus to take him out of town, did not have money for a hotel, and decided to go to Aquinas' campus "because its [sic] somewhere I once felt comfortable, I guess."  *Id*.  Specifically, Bruneau was "looking for an empty dorm room or place to sleep for the night."  *Id*. at PageID.351.  While on the Aquinas campus, Bruneau recalled: that he attempted to gain access to the Art and Music Center (*Id*. at PageID.358);

5

that he asked a male student if the student would allow him to store his bags in the student's room and spend the night with him (*id*.); that he was carrying dildos and bondage paraphernalia in his bags (*id*. at PageID.359); that he may have stepped into a classroom and may have entered a student dormitory, and may have gone to the common room within the dormitory (*id*.); that he went to the student library, and was playing loud music on his phone while students were studying and interrupted them (*id*. at PageID.351, 357); that he may have had a few conversations with students in the library which they regarded as inappropriate, including "complimenting one female student on her eyes" and touching the arm of a male student and commenting that he was a "big guy" (*id*. at PageID.351); and that "it might be accurate" that he asked at least one Campus Safety officer to have sexual relations with him (*id*. at PageID.356).

An incident report from the Aquinas Department of Campus Safety indicated that Bruneau had been on campus since about 6:46 p.m. and had contact with or had disrupted at least 16 individuals. *See* Incident Report (ECF No. 50-30) (referring to statements by individuals identified as Person A through Person P). According to the report, individuals made statements that a man fitting Bruneau's description: entered a classroom and had been kicked out by the professor; was unsettling students in the library and had two unusually shaped bottles of a white substance and "horse pills;" was sitting at a table in the library with a group of students trying to study playing a Brittany Spears video on his cellular device at a loud volume; grabbed someone's arm and stated "Wow, you are really big;" put two vials of a white substance on the table in front of him and asked a student if she wanted to see what was inside; and when interacting with Campus Safety Officers "began asking inappropriate questions about whether or not the officers wanted to have sexual relations with him." *Id*.

Bruneau acknowledged that a report stated that he was asked to leave but testified that, "I don't really remember point-blank being asked to leave." Bruneau Dep. at PageID.351. Grand Rapids Police Department (GRPD) was called at about 11:30 p.m. *See* Incident Report. Upon searching Bruneau's belongings, GRPD Officers found chains, ropes, dildos, "and other sexual toys and apparel." Incident Report at PageID.429. Plaintiff was arrested for trespassing on the campus and taken to jail. Bruneau Dep. at PageID.351, 360.

There is no evidence any of the individuals at Aquinas involved in reporting or responding to the incident knew Bruneau or had any information about his background. *Id*. at PageID.359-360. In connection with this incident, GRPD personnel advised the Aquinas Campus Safety personnel "that they needed to be careful around Mr. Bruneau, that he had last been known to be in Toronto prior to this incident, and that the Grand Rapids Police Department had previously attempted to help or had been attempting to help authorities so that Mr. Bruneau would not be allowed to return to the country." Defendant's Response to Interrogatory No. 9 (ECF No. 50-5, PageID.305).[3]

On the day following the trespass, Aquinas' Campus Safety personnel delivered a "Notice of Trespass" to Bruneau at the jail. Bruneau Dep. at PageID.360. The Notice advised Bruneau in part,

> This Notice of Trespass is hereby issued to inform you that you are NOT permitted to enter or come upon the private property of Aquinas College located in the City of Grand Rapids, State of Michigan, County of Kent. . . .
>
> You are also hereby notified that you are not to have any contact with any member of the Aquinas College community on Aquinas College property by any means and under any circumstance. If you do attempt to establish contact with any member of the Aquinas College community, local law enforcement will be contacted immediately.

---

[3] In this regard, the Court notes that while Bruneau provided the Court with an address in Grand Rapids, Michigan, he appears to reside in Canada, having mailed court papers via Canada Post, some bearing a return address located in Toronto, Ontario. *See* ECF Nos. 21, 23, 24, 25, 28, 34, 34-1, 35, 52, 52-1, 52-2, 53, 54, 56, 57, and 58.

>  Should you fail to abide by this Notice. you may he subject to arrest and criminal prosecution pursuant to MCL 750.552. This notice will remain in effect from this date – February 11, 2016 – until such time as it is cancelled by a designated representative of Aquinas College.

Notice of Trespass (Feb. 11, 2016) (ECF No. 50-31).

Bruneau pled guilty to and was convicted of trespassing at Aquinas' campus with respect to the February 2016 incident. Bruneau Dep. at PageID.360-361. He was sentenced to 112 days in jail. *Id*. at PageID.360. Beginning in March 2017, Bruneau sent letters and emails to various individuals at Aquinas to have the "no trespass" restrictions lifted and to continue his education at the college. *See* Letters and Emails (ECF No. 50-32).

###   C.   Discussion

Bruneau filed this lawsuit against Aquinas on December 10, 2019. Aquinas contends that Bruneau's claims under the three statutes are barred by a three-year statute of limitations. With respect to the federal claims, "[n]either § 1983, the ADA, nor the Rehabilitation Act provides a statute of limitations, so courts must borrow one from the most analogous state cause of action." *J. Endres v. Northeast Ohio Medical University*, 938 F.3d 281, 292 (6th Cir. 2019). Bruneau's ADA claim is subject to the three-year statute of limitations that governs personal injury actions in Michigan, M.C.L. § 600.5805.[4] *See Brink v. Allegan County Circuit Court*, No. 1:10-cv-654, 2011 WL 1527806 at *2 (W.D. Mich. April 20, 2011). This three-year limitations period also applies to his RA claim. *See McCormick v. Miami University*, 693 F.3d

---

[4] M.C.L. § 600.5805 provides in pertinent part:

"(1) A person shall not bring or maintain an action to recover damages for injuries to persons or property unless, after the claim first accrued to the plaintiff or to someone through whom the plaintiff claims, the action is commenced within the periods of time prescribed by this section.

(2) Except as otherwise provided in this section, the period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person or for injury to a person or property."

654, 662 (6th Cir. 2012) (applying the personal injury statute where the injury took place to an RA claim).  Finally, the statute of limitations for Bruneau's claim brought pursuant to Michigan's PWDCRA is also three years.  *See* M.C.L. § 600.5805.

With respect to his expulsion from Aquinas in 1990, Bruneau waited over 29 years to file his complaint alleging violations of the ADA, RA, and PWDCRA.  These claims were barred by the statute of limitations over 20 years ago.

Bruneau's most recent ADA, RA and PWDCRA claims arise from the events which occurred on February 10 and 11, 2016.  Using the later of these two dates, the statute of limitations for these claims expired on February 11, 2019.  However, Bruneau did not file this lawsuit until December 10, 2019, about ten months after the statute of limitations expired.  Based on this record, Bruneau's claims brought pursuant to the ADA, RA, and PWDCRA are untimely, and Aquinas is entitled to summary judgment with respect to all of these claims.

Finally, Bruneau's attempts to have Aquinas rescind the alleged discriminatory actions did not extend the statute of limitations.  The cause of action in a discrimination claim accrues when the discreet act of discrimination occurred.  *Janikowski v. Bendix Corp.*, 823 F.2d 945, 947 (6th Cir. 1987).  Here, the discrete acts of discrimination allegedly occurred on September 26, 1990 (expulsion), February 10, 2016 (arrest for trespass), and February 11, 2016 (notice of trespass).  Bruneau's attempts to contest these decisions did not extend the statute of limitations. "Repeated requests for further relief from a prior act of discrimination will not set the time limitations running anew." *Id*. at 948 (6th Cir. 1987) (internal quotation marks omitted).  *See Soignier v. American Board of Plastic Surgery*, 92 F.3d 547, 552 (7th Cir. 1996) ("discovery of the original act of discrimination, not future confirmation of the injury or determination that the injury is unlawful, is when the statute of limitations begins to run") (emphasis omitted) (citing

*Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)). A defendant's refusal to undo an earlier, allegedly discriminatory decision, is not a fresh act of discrimination for purposes of the statute of limitations. *Soignier*, 92 F.3d at 552. Accordingly, all of Bruneau's claims are barred by the three-year statute of limitations, and Aquinas' motion for summary judgment should be granted.[5]

### III.    RECOMMENDATION

For these reasons, I respectfully recommend that defendant Aquinas' motion for summary judgment (ECF No. 49) be **GRANTED** and that this action be **TERMINATED**.


Dated:  October 5, 2021                              /s/ Ray Kent
                                                     United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[5] The Court notes that Aquinas' supporting brief cited other grounds for summary judgment. However, given the record in this case, it is unnecessary for this Court to address arguments other than the statute of limitations.